Sylvester SCOTT, Ernestine Wilson, Leroy W. Dunbar, Helen Brown, Timothy Mays, Wheeler M. Washington, Alexander S. Anderson, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

ALABAMA STATE BOARD OF EDUCATION, Governor Albert P. Brewer, Ex Officio Chairman of Alabama State Board of Education, Montgomery, Alabama; Levi Watkins, Individually and as President of Alabama State College, Montgomery, Alabama; Rose H. Robinson, Individually and as Acting Director of Student Affairs, Alabama State College, Montgomery, Alabama; Simon W. Walker, Individually and as Coordirector of Student Teaching; John B. College, Montgomery, Alabama; Savage J. Whisenhunt, Individually and as Director of Student Teaching, John B. Hall, Individually and as Chairman of the Faculty Discipline Committee; Zelia S. Evans, Individually and as a member of the Ad Hoc Faculty-Student Committee; and B. J. Simms, Individually and as a member of the Ad Hoc Faculty-Student Committee, Defendants.

Civ. A. No. 2865-N.

United States District Court
M. D. Alabama, N. D.
May 14, 1969.

Charles S. Conley and William H. Thomas, Montgomery, Ala., for plaintiffs.

Gray, Seay & Langford, Montgomery, Ala., for defendant college officials.

Goodwyn, Smith & Bowman, Montgomery, Ala., for defendant state officials.

## ORDER

JOHNSON, Chief Judge.

Plaintiffs are approximately 50 students at Alabama State College who were indefinitely suspended or dismissed from college because of their participation, along with a number of nonstudents, in events related to or growing out of "demonstrations" in and around the college dining hall from March 29, 1969, to April 8, 1969. As a result of this activity the college was closed for a period from April 7 to April 21, 1969. Plaintiffs allege that the activities for which they were suspended or dismissed from school are protected by the First Amendment to the Constitution of the United States and that, in any event, the procedures adopted by the college did not satisfy the requirements of the due process clause of the Fourteenth Amendment. Their complaint seeks injunctive relief in the form of an order of reinstatement, and damages. The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. §§ 1331(a) and 1343(3) and (4).

President Levi Watkins and other officials of Alabama State College filed an answer and a counterclaim in which they

sought injunctive relief against continuing actions of the plaintiffs alleged to be interfering with the orderly operation of Alabama State College as an educational institution. A motion for temporary restraining order was filed simultaneously and was granted May 5, 1969, on the basis of numerous affidavits reflecting that subsequent to filing this lawsuit plaintiffs, in an attempt to promote their cause by extra-judicial means, had:

(1) Refused to quit the campus after being dismissed or suspended as students;

(2) Intimidated students desiring to attend classes and prevented their attendance at classes;

(3) Intimidated faculty members desiring to conduct classes;

(4) Damaged college property; and

(5) Otherwise disrupted the orderly operation of Alabama State College as an educational institution.

The defendants Alabama State Board of Education and Governor Albert P. Brewer as ex officio Chairman thereof have moved to dismiss the complaint as it relates to them on the basis that primary responsibility for maintenance of order at the college rests with the college administration and that they have exercised no authority relative to the actions from which the complaint arises. This motion is due to be granted.

## I

### PROCEDURAL DUE PROCESS

In the landmark case of Dixon v. Alabama State Board of Education, 294 F. 2d 150 (5th Cir. 1961), a case also involving Alabama State College students, it was settled that due process requires notice and some opportunity for a hearing before students at a tax-supported college may be expelled for misconduct. Here, notice was given and hearings were held; the issue is whether the procedure provided satisfied constitutional requirements.

The evidence reflects that approximately 80 students were served with formal statements of charges. Each of these statements was on a form letter listing 11 charges growing out of the "demonstration." [1] Those charges which were deemed applicable to the addressee were marked with a prominent "X." The letter advised the students that hearings would be held on April 17, 1969, at which time they would be afforded an opportunity to be heard and to present witnesses in their defense.

The hearings were later rescheduled for April 23, 1969. At that time, counsel for plaintiffs, representing some 50 of the students charged, objected to the statement of charges on the ground that the charges were unduly vague and did not advise students specifically of the acts they were alleged to have committed. When counsel's request that the charges be made more definite was denied, he and plaintiffs, on his advice, dramatically refused to participate in the hearings.

The hearings were held as scheduled before an Ad Hoc Faculty-Student Committee. This Committee heard the evidence against each student charged, made specific findings with respect to each charge, and made recommendations to President Watkins of an appropriate disposition of each case. As a result, it appears that 7 students were dismissed from the college, 43 were indefinitely suspended, 21 were found not guilty, and 3 cases were disposed of otherwise. Those who were dismissed or suspended were offered an opportunity to have their cases reviewed by President Watkins. Of those who exercised that opportunity, at least eight had their indefinite suspensions reduced to special probation.

Plaintiffs' attack in this Court on their dismissals and suspensions continues to center on the alleged vagueness of the charges. Dixon, supra at 158, advises that:

"The notice should contain a statement of the specific charges and grounds which, if proven, would jus-

---

1. A copy of this letter is attached to this order as Appendix A.

tify expulsion under the regulations of the Board of Education."

An examination of the statement of charges reveals that some of the charges do indeed lack the specificity required to enable a student adequately to prepare defenses against them. For example, the first charge provides:

"Willful refusal to obey a regulation or order of Alabama State, such refusal being of a serious nature and contributed to a substantial disruption of the administration and operation of the College, March 29–April 8, 1969."

That charge is rendered completely open-ended by the failure to specify which regulation or order was involved.

On the other hand, certain of the other charges, when viewed in the circumstances of the case, make quite clear the basis upon which the college proposes to take disciplinary action. For example, the second charge provides:

"Principals in the seizure, occupation, and unauthorized use of the Alabama State Dining Hall and Union building, March 29–April 8, 1969."

■ Plaintiffs contend that one bad apple spoils the entire bushel, *i. e.*, that if any of the charges against a student was unconstitutionally vague then he was deprived of an education without due process of law. This Court, however, cannot adopt such a rigid and formalistic approach. *Dixon* makes clear that the question in each case is whether the rudimentary elements of fair play have been observed. Thus, this Court concludes that if a student was notified and found guilty of one satisfactorily specific charge, then his dismissal or suspension will not be held to be procedurally inadequate on the ground of vagueness, whether or not he was also charged with unduly vague charges. By way of analogy, it may be observed that in the criminal law, where more rigorous procedures are required, an appellate court will not examine alleged errors with respect to one count of an indictment when the appellant was also convicted and sentenced concurrently on another count found to be or conceded to be vaild. Benefield v. United States, 370 F.2d 912 (5th Cir. 1966); Mishan v. United States, 345 F.2d 791 (5th Cir. 1965).

■ An examination of the exhibits reveals that all but eight of the dismissed or suspended students were charged with and convicted of *inter alia*, being principals in the seizure, occupation, and unauthorized use of the dining hall. Of those eight remaining, Timothy Mays was found guilty of the specific charge that he "threatened and/or pushed an Alabama State Official who was carrying out his appropriate functions at the College Dining Hall and Union building, March 29–April 8, 1969"; Jonny F. Hall was found guilty of the specific charge that he "misappropriated and/or removed without authority Alabama State equipment and supplies, March 29–April 8, 1969"; and Marvin E. Wilson, Sandrew Marshall, and Bobby L. Cobb were found guilty of the specific charge that they "blocked entrances and/or held doors so as to deny rightful persons normal entrance and exit to the Alabama State Dining Hall March 29–April 8, 1969."

■ Murry A. Hardy and Joshua Booker were charged only with the willful refusal to obey a regulation or order of Alabama State College—the charge which was indicated above to be unduly vague. Leroy Dunbar was charged with the above vague charge and, in addition, with the charge that he "through verbal exhortations and/or threats and/or intimidation prevented or discouraged other Alabama State students from attending classes, March 31–April 7, 1969." That charge is also ambiguous and vague. "Exhortation" in normal usage would be used to describe speech that might well be constitutionally protected. These three students will be ordered reinstated, pending, if the college desires, a further specification of the charges and another hearing.

Plaintiffs have not directly challenged the adequacy of the hearings themselves.

In the course of the hearing in this Court, however, they did raise some question about the impartiality of the Committee which heard the evidence. The evidence reflects that this Committee was selected in a reasonable fashion considering the emotional circumstances which tended to render nearly everyone at the college at least mildly partisan. Moreover, this Court, with the advantage of hindsight, finds that, viewed in the large, the Committee appears to have dealt fairly with the students involved.

█ It is also appropriate to note that plaintiffs were afforded an opportunity to be heard, to present evidence, and to be represented by counsel at the hearings. Those who on advice of counsel did not take advantage of these opportunities have waived whatever rights they may have had to them. This Court will express no opinion on whether or not that advice reflected good political judgment; it will be observed that, although plaintiffs' counsel is an able and experienced attorney, it may have been unwise legal advice. As plaintiffs' counsel knows, or should know, when one makes an objection—whether meritorious or not—in a judicial proceeding, and the objection is overruled, the only orderly and efficient procedure is to have the objection noted and to appeal to higher authority if one does not prevail. Any other procedure would afford endless opportunities for delay in unmeritorious cases by the simple tactic of making an objection and walking out if the objection is overruled. Here, the Committee was duly and legally constituted, jurisdiction had vested, and due notice of the hearing had been given.

## II

## FIRST AMENDMENT

█ Having determined that the substantial majority of the dismissed and suspended students were not denied procedural due process, this Court now finds it necessary to reach the issue of whether their dismissals and suspensions violated substantive rights protected by the First Amendment. This Court again takes the view that if a student was found guilty of a specific charge of conduct not protected by the First Amendment, whether or not he is also charged with activities which might be protected, then his suspension or dismissal may stand. The issue then becomes whether the activities described by the college as "the seizure, occupation, and unauthorized use of the dining hall" and described by the students as "a demonstration" are protected by the First Amendment.

The evidence reflects, however one describes it, that these plaintiffs and other students and nonstudents, rather than the duly constituted authorities of the college, were in control of the dining hall for a period of ten days. Although the operations of the dining hall were not altogether halted, it is clear that the normal and orderly operation of the dining hall was considerably altered. Whether intended or not, one clear result of these students' actions was to deprive numerous other people, including students with contractual rights in the form of meal tickets, of the opportunity to use the dining hall. The college clearly has a right to enforce regulations which tend to prevent conduct having this effect.

The plaintiffs seem to be arguing that irrespective of the college's interest in the orderly operation of the dining hall, their conduct was protected symbolic speech because they intended by their conduct to communicate their dissatisfaction with certain conditions at the college. The Supreme Court rejected that theory in United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968):

> "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

█ Plaintiffs also seem to advance the view that their conduct was protected because it was largely peaceful and nonviolent and involved little if any destruction of college property. But that char-

acteristic alone does not make the conduct protected speech.

■ There seems to be a tendency in this country—and it is especially prevalent among students—toward the view that if one only believes strongly enough that his cause is right, then one may use in advancing that cause any means that seem effective at the moment, whether they are lawful or unlawful and whether or not they are consistent with the interests of others. The law, of course, cannot and does not take that position, and those who do must not expect to receive substantive protection from the law; to the contrary, they must expect to be punished when they violate laws and college regulations which are part of a system designed to protect the rights and interests of all.

### III

### WORK AND PRACTICE TEACHING PROGRAMS

Plaintiffs also complain that certain of their campus jobs were terminated and that certain of them were not permitted to begin or to resume their participation in the practice teaching program after the college was reopened because of their participation in the "demonstrations." Plaintiffs contend that this was summary punishment without a hearing that violated their procedural rights and that it was punishment for engaging in constitutionally protected activity in violation of their rights under the First Amendment.

The First Amendment issue has already been decided above adversely to the plaintiffs. The issue of whether due process requires a hearing before participation in work and practice teaching programs may be terminated—a question of first impression—is now moot with respect to those students whose dismissals and suspensions have been upheld and is premature with respect to those students who have been reinstated.

### IV

### DEFENDANTS' COUNTERCLAIM

■ Defendants have taken the position in this case that the activities for which most of the students were suspended or dismissed were not constitutionally protected and that the plaintiffs were afforded procedural due process. They further allege that although plaintiffs have been dismissed or suspended, many of them have remained on campus and have engaged in activities designed to reverse the administration's decision; that such activities have interfered with the rights of other students and otherwise disrupted the orderly operation of the college as an educational institution. As indicated above, when these allegations were substantiated by affidavits, the Court issued a temporary restraining order against the plaintiffs. That order was based on this Court's consistently held position that when a party brings a dispute with another party into court for a judicial resolution both parties are under an obligation not to resort to other means, including those which in other circumstances would be constitutionally protected, of forcing a settlement of the dispute in their favor. This requirement is grounded in the nature of the judicial process. That process nearly always requires a certain period of time prior to a hearing and to a decision, although in this case and similar cases it may be only a few days. During that time, in order for the court to retain complete jurisdiction over the subject matter, the status quo as of the time of the filing of the suit must be maintained. Moreover, it is imperative for the integrity of an independent judiciary that the court be free from pressures, direct or indirect, tending to preclude thoughtful, deliberate and unemotional consideration of the legal issues.

■ It is also imperative that those who invoke the judicial process recognize the finality of a judicial resolution of the controversy. A decision of this Court, of course, may be appealed to higher courts; the Alabama Legislature may

be prevailed upon to change the rules with respect to student conduct. But those students whose dismissals and suspensions by Alabama State College have been upheld by this Court may not resort to direct action on the campus of Alabama State College for the purpose of exerting pressure on the officials, *i. e.*, the defendants in this suit, to change their decision concerning the dismissals and suspensions. The temporary restraining order will be enlarged into a preliminary injunction.

In accordance with the foregoing, it is the order, judgment and decree of this Court that the plaintiffs' motion for a preliminary injunction, except insofar as that motion relates to plaintiffs Joshua Booker, Murry A. Hardy, and Leroy W. Dunbar, be and the same is hereby denied.

It is further ordered that plaintiffs Joshua Booker, Murry A. Hardy, and Leroy W. Dunbar be reinstated as students at Alabama State College with the same rights which attached to their status as students prior to their suspension, pending, if defendant officials wish to proceed further against these plaintiffs, a more detailed specification of charges and an additional hearing.

It is further ordered that the motion of defendants Alabama State Board of Education and Governor Albert P. Brewer, as ex officio Chairman thereof, to dismiss this action against them as parties defendant, be and the same is hereby granted.

It is further ordered that the named plaintiffs Sylvester Scott, Ernestine Wilson, Helen Brown, Timothy Mays, Wheeler M. Washington, and Alexander S. Anderson; all other plaintiffs whose dismissals or suspensions by Alabama State College have been upheld by this Court; and those students or nonstudents acting in concert with them and having actual notice of this order, be and each is hereby enjoined and restrained from:

(1) Failing and refusing to leave the campus of Alabama State College after having been dismissed or indefinitely suspended as a student;

(2) Failing to leave the grounds or any building located on the campus of Alabama State College when requested to do so by officials of said college;

(3) Taking possession or failing and refusing to surrender possession of any of the buildings located on the grounds of Alabama State College;

(4) Harassing, threatening or intimidating any faculty or staff member, employee, student or official of Alabama State College, or any of its several colleges and departments;

(5) Obstructing or preventing the attendance in classes of students and faculty members;

(6) Destroying or attempting to destroy, defacing or attempting to deface any structures, buildings, materials or equipment used, held for use, maintained, operated or controlled by Alabama State College; and

(7) Committing any other act or acts disrupting the orderly processes or operations of Alabama State College, or any of its several colleges and departments.

It is further ordered that the court costs incurred in this cause be and they are hereby taxed two-thirds against the plaintiffs and one-third against the defendant officials of Alabama State College, for which execution may issue.

# ALABAMA STATE COLLEGE

### MONTGOMERY 4, ALABAMA

OFFICE OF STUDENT AFFAIRS

April 13, 1969

## NOTICE OF CHARGE(S) AND SCHEDULED HEARING

TO:

Student No.

As a result of the recent disturbance on the Alabama State College campus, you are hereby informed of the charge(s) levied against you as checked below:

_____ Willful refusal to obey a regulation or order of Alabama State, such refusal being of a serious nature and contributed to a substantial disruption of the administration and operation of the College, March 29-April 8, 1969.

_____ Principals in the seizure, occupation, and unauthorized use of the Alabama State Dining Hall and Union Building, March 29-April 8, 1969.

_____ Through verbal exhortations encouraged other students to perform disruptive acts in threat to the peace and safety of persons and property on the Alabama State campus in and around the College Dining Hall and Union building, March 29-April 8, 1969.

_____ Threatened and/or pushed an Alabama State official who was carrying out his appropriate functions at the College Dining Hall and Union building March 29-April 8, 1969.

_____ Misappropriated and/or removed without authority Alabama State equipment and supplies, March 29-April 8, 1969.

_____ Failed to obtain guest visitation cards or otherwise to obtain College authorization for non-student speakers and/or non-student participants in the occupancy of the Alabama State Dining Hall, March 29-April 8, 1969.

_____ Disturbed programs, meetings, or other activities being held at Alabama State, March 29-April 8, 1969.

_____ Used profanity and/or exhibited disorderly conduct on the Alabama State campus, March 29-April 8, 1969.

_____ Blocked entrances and/or held doors so as to deny rightful persons normal entrance and exit to the Alabama State Dining Hall March 29-April 8, 1969.

_____ Through verbal exhortations and/or threats and/or intimidation prevented or discouraged other Alabama State students from attending classes, March 31-April 7, 1969.

_____ Made illegal and/or unauthorized entry into the Alabama State College Union building, March 29-April 8, 1969.

The College administration wishes carefully to weigh any defense  you may have against the charge(s) along with the evidence which will be presented against you.  If you wish to be heard, you are requested to testify, and to present any witnesses in your behalf to the Faculty Committee assembled at _____ a.m., p.m., on _____, _____, in McGehee Hall, Room 106, Alabama State College, Montgomery, Alabama.

_____/s/ Rose H. Robinson_____
Acting Director of Student Affairs