**Mark Curtis PIERCE, Plaintiff,**

v.

**SCHOOL COMMITTEE OF NEW BED-FORD et al., Defendants.**

**Civ. A. No. 71-209.**

United States District Court, D. Massachusetts.

Feb. 16, 1971.

---

Norman S. Zalkind, Roger C. Park, Zalkind, Klubock & Silverglate, Boston, Mass., for plaintiff.

Malcolm Jones, City Sol., Arthur J. Caron, Jr., Asst. City Sol., New Bedford, Mass., for defendants.

OPINION

CAFFREY, District Judge.

This is a civil action brought by Mark Curtis Pierce, by his father and next friend George Frederick Pierce, against the individual members of the school committee of the City of New Bedford and against the Principal of the New Bedford High School. Jurisdiction of this court is alleged to exist under 28 U.S.C.A. § 1343 and the cause of action is alleged to arise under 42 U.S.C.A. § 1983. The existence of proper jurisdiction in this court will be assumed solely for purposes of handing down a ruling on plaintiff's application for a preliminary injunction. But, cf. Mailloux v. Kiley et al., 436 F.2d 565, January 14, 1971, in which the Court of Appeals for this Circuit, in a *per curiam* opinion, made the observation:

> " * * * we say that the court does not intend to referee every debatable dispute between school teachers and their employers, simply because academic freedom may arguably be involved. We will not superimpose our judgment on the school authorities, unless, in a constitutional area, we consider their decision plainly wrong."

The complaint alleges that plaintiff was involved in an incident at the New Bedford High School on December 22, 1970, as a result of which he was accused by Mr. Rodriguez, the Principal, of provoking other students by his mistreating an American flag, which in turn caused him to be suspended from the school. The complaint also alleges that a hearing was held on January 11, 1971, by the New Bedford school committee, at the conclusion of which plaintiff was permanently expelled from the high school on the basis of a five-to-one vote. The complaint alleges that a variety of federally guaranteed rights of plaintiff were denied by the foregoing, and specifically claims that the denial of a requested postponement of the hearing before the school committee violated Fifth and Fourteenth Amendment rights. The complaint also recites that freedom of speech, freedom of the press, procedural due process, and equal protection of the laws, were denied in the course of this affair.

A hearing was held in this court, at which the plaintiff, Mr. Daniel Gilbarg, a social science instructor at Bristol County Junior College, and John Xifaras, Esq., testified for the plaintiff, and Dr. James R. Hayden, Superintendent of Schools for the City of New Bedford, testified for the defendants. The minutes of the January 11 meeting of the school committee were placed in evidence, as was a copy of the Students' Handbook and a copy of plaintiff's educational record in various schools, which school record had also been considered by the school committee in the course of the January 11 hearing. Included in the minutes of the hearing is a copy of a letter, dated January 11, 1971, from plaintiff's present attorney to the New Bedford School Committee.

On the basis of the testimony of the witnesses and the documentary evidence described above, I find and rule as follows:

1. As far back as the week of January 20, 1964, plaintiff's poor behavior and misconduct has hindered his educational progress. When he advanced from the Elizabeth Carter Brooks School to the Sippican School in Marion, he had already been involved in at least two disciplinary matters, the latter of which had to do with a fist fight and eventuated in his suspension. From October 10, 1969 to the present, at least ten different teachers have written conduct cards with regard to plaintiff's activities, covering offenses such as insubordination, excessive tardiness, insolence, verbal abuse, banging on tables, baiting of teacher, passing malicious gossip, and disrespectful behavior. Moreover, throughout 1969 and 1970 plaintiff had amassed thirteen detention periods and fourteen suspensions, not including the December 22, 1970 suspension with regard to which the present litigation has been brought.

2. On March 10, 1970, and again on May 12, 1970, the High School Principal, Mr. Paul Rodriguez, wrote to Mr. Philip Bronspiegel, Assistant Superintendent of Schools in New Bedford, informing the latter of plaintiff's most recent suspension and recommending that plaintiff be expelled from the school. However, in each case plaintiff was readmitted over the objection of the Principal.

3. The only disciplinary action imposed on the plaintiff in the 1970–71 school year, prior to his December 22, 1970 suspension, was a detention period imposed in October of 1970.

4. Because he technically is not a senior at New Bedford High School due to lack of credits, plaintiff was given special privileges by the school committee to attend an evening school in order to aid his efforts to achieve the required number of credits to permit him to be graduated with his class next June.

5. On December 22, 1970, Joseph Williams and George McLeod, traffic officers in the hall adjacent to the school auditorium, observed plaintiff discussing a matter with others. McLeod heard plaintiff say, "let's go in and start something." They both saw plaintiff pull out what seemed to be a small replica of an American flag. Williams heard plaintiff say to one of the others, "go into the auditorium and blow your nose on it." Mr. Robert Messier, a teacher at the high school who was on duty in the auditorium, soon thereafter observed a "disturbance" in the auditorium. He found plaintiff with two other boys in the center of a large group of students, and both plaintiff and one other boy blew their noses on the handkerchief-flag(?). Since many students were getting excited, Messier went to the office to get help and upon his return observed "a lot of commotion." Shortly thereafter, plaintiff was suspended.

6. During the Christmas recess, plaintiff and his parents met with Assistant Superintendent Caron, on December 31, 1970. Plaintiff was advised of his rights, to wit (a) the right to remain silent, (b) the right to counsel, (c) the right to cross-examine witnesses, and (d) the right to know the charges against him. On that date, too, the statement of charges was given to plaintiff. It read as follows:

"The Principal of New Bedford High School has recommended that Mark Pierce be denied re-admission on the basis of constant disruptions and disrespectful manner and behavior. He further states that this student has been insolent, defiant, disrespectful, insubordinate and persistent in his general misconduct over an extended period of time."

7. On January 11, 1971, a closed hearing was held by the School Committee. The evidence proffered high-lighted plaintiff's past behavior. Plaintiff, in rebuttal, claimed that most of his "conduct reports" resulted from personality clashes with "home room" teachers whom he did not have for regular course work, and from three "science teachers who were right-winged." The remainder of the hearing covered the December 22 incident.

8. I find that plaintiff's charge regarding Mr. Messier is unfounded. The minutes of the hearing clearly show that Messier answered questions and remarks addressed to him both by plaintiff and his mother.

9. The January 11 letter from Mr. Zalkind, plaintiff's counsel, to the school committee requested a continuance of the hearing until a case which had been begun on January 7, 1971 in the New Bedford District Court was terminated in either the District, Superior or Supreme Judicial Court of the Commonwealth, or in the Federal courts of the United States. It also asked that plaintiff be reinstated without a hearing until after the termination of the criminal litigation. I rule that this request was totally unreasonable, since it was tantamount to a request for an indefinite period which could extend, in normal course, for a period of two to three years, and which, depending on the uncertainties and va-

garies of litigation, could also extend for a substantially longer period, as has the criminal case against the celebrated Mohammed Ali, for example; as did the litigation in this court captioned United States v. McGarry; and as have, unfortunately, far too many criminal cases in state and federal courts of the United States. The request, in effect, asked for plaintiff's reinstatement without a hearing for a period of time which would have allowed him to finish not only high school but college as well. I conclude that this weasel-word epistle to a lay body raises serious questions of the good faith of its writer, and, in any event, was not a request for a continuance for any reasonable or ascertainable time, and that it was properly denied by the school committee.

■ 10. On the basis of the minutes of the January 11, 1971, meeting of the New Bedford School Committee, I further find and rule that the school committee acted legally and properly in going foward with the hearing, in view of the fact that plaintiff and his parents indicated that they were agreeable to Mr. Gilbarg serving as counsel for plaintiff at said hearing, and also in view of the unreasonable, if not illusory, nature of the request for a continuance made by plaintiff's counsel, described in paragraph 9 hereof. The hearing was held on the basis of the charges set out in paragraph 6 hereof, and I find and rule that those charges, on the basis of which the hearing was held and plaintiff's expulsion was voted, went to his "constant disruptions and disrespectful manner and behavior, and his insolent, defiant, disrespectful, insubordinate, and persistent general misconduct over an extended period of time." I find and rule that the hearing and expulsion were not based on, or related to, either plaintiff's alleged political views or any question of whether or not he desecrated the American flag in the course of the December 22 incident. I credit the testimony of Superintendent of Schools Hayden to the general effect that he did not care whether plaintiff was in fact using an American flag or a plain old piece of Kleenex for a handkerchief, but that what he was concerned about was that plaintiff was deliberately trying to stir up another disruptive incident on December 22, 1970. It should be noted that at the executive session plaintiff was afforded the right to counsel, the right to cross-examine witnesses called by the school department, and the right to call his own witnesses, all of which rights, from the minutes of the hearing, appear to have been taken advantage of.

11. At the close of all the evidence, the hearing was adjourned and only the school committee remained in session. Soon thereafter it voted, five in favor and one opposed, to exclude plaintiff from the New Bedford High School.

■■ I rule that there is no merit in plaintiff's contention that constitutional rights were denied because he was not allowed to make either a stenographic or a mechanical recording of the school committee hearing. Whitfield v. Simpson, 312 F.Supp. 889 (E.D.Ill.1970). Nor is there any merit in his contention that he was entitled to an open hearing. I so rule because of the provisions of Mass. G.L. c. 39, sec. 23A, which authorizes a school committee to go into executive session with regard to " * * * those matters which if made public might adversely affect * * * the reputation of any person * * *."

■ Plaintiff's claim that his expulsion was not based on a pre-existing rule and regulation and, therefore, that it violated the tenets set out in Hasson v. Boothby, 318 F.Supp. 1183, 1184 (D. Mass. 1970), is totally without foundation. School Rule 8, contained in the Students' Handbook of the New Bedford High School, expressly prohibits the "making unnecessary noise or causing disturbance in classrooms, corridors, cafeteria or auditorium." Even if there were any foundation in fact for the contention by plaintiff that the Students' Handbook rules are "astoundingly vague and over-broad," and there is not, it should be kept in mind that the Court of

Appeals for this Circuit has ruled, in Richards v. Thurston, 424 F.2d 1281 (1970), at 1282:

> "We would not wish to see school officials unable to take appropriate action in facing a problem of discipline or distraction simply because there was no preexisting rule on the books."

■ Nor is there any substantiation on the record before this court of plaintiff's claim of denial of an impartial hearing. This claim is largely premised on the fact that it was developed at the school committee hearing that plaintiff had distributed literature which labeled a member of the school committee a "fascist pig." There is nothing in the minutes of the hearing to indicate that this factor was the basis of any of the five votes against plaintiff. The five-to-one vote of the school committee which resulted in his expulsion was based on the grounds that he was "insolent, defiant, disrespectful, insubordinate, and persistent in his general misconduct over an extended period of time, and that he did materially disrupt the school."

I rule that this finding was completely consistent with the evidence described in the minutes of the hearing which adequately justified his expulsion on what was, in effect, the third time around for plaintiff with the same type of disruptive, defiant, insolent and insubordinate behavior. His expulsion on this evidence would be adequately supported regardless of his political views, be they Liberal, Conservative, Communist, Fascist, Republican, Democrat, Farm Laborite, Prohibitionist, Whig, Tory, or whatever. It might be noted in passing that there is no legal basis for a person subject to the control of a school committee to hurl epithets of the nature of "fascist pig" at all members of the school committee and thereby disqualify it from acting in his case. If the hurling of such epithets against the members of a public agency, such as a school committee, results in their being prejudiced against the hurler, this is a risk he takes, and any prejudice resulting is self-induced, since there is no legal way for any other persons to exercise the authority of the duly elected members of the school committee and it would thus be a very simple device for any unruly, insubordinate, troublemaker in the school to put himself beyond the risk of expulsion, simply by hurling nasty names at the only people with authority to pass on his case.

■ Finally, I rule that the statement of charges handed to plaintiff and his parents at the December 31 hearing by Assistant Superintendent Caron were sufficiently definite to satisfy the due process requirements of such cases as Lucia v. Duggan, 303 F.Supp. 112 (D. Mass. 1969), and similar cases such as Scott v. Alabama State Bd. of Education, 300 F.Supp. 163 (M.D. Ala. 1969), Scoggin v. Lincoln University, 291 F. Supp. 161 (W.D. Mo. 1968), and Whitfield v. Simpson, *supra,* the last three of which are clearly distinguishable on their factual backgrounds. The notice herein was completely adequate on the basis of plaintiff's record of disciplinary incidents over the past few years. The reference in the statement of charges that his denial of readmission was based on his "constant disruptions and disrespectful manner and behavior," as well as because of the fact that he had been "insolent, defiant, disrespectful, insubordinate, and persistent in his general misconduct over an extended period of time" was adequate to put him on notice that his expulsion was keyed to his entire sorry career on the high school level, with its thirteen detention periods and fourteen suspensions prior to the suspension and expulsion involved herein.

In short, I rule that on the evidence before this court plaintiff has not shown any denial of any federally protected right, has shown no probability of or substantial likelihood of success on the merits, and consequently is not entitled to the injunctive relief sought.

Accordingly, an order denying injunctive relief will be entered in conformity with the foregoing.