**Paul R. SOGLIN et al., Plaintiffs-Appellees,**

v.

**Joseph F. KAUFFMAN, etc., et al., Defendants-Appellants.**

No. 17427.

United States Court of Appeals Seventh Circuit.
Oct. 24, 1969.

164

Robert W. Warren, Atty. Gen., Warren M. Schmidt, and Charles A. Bleck, Asst. Attys. Gen., Dept. of Justice, Madison, Wis., for defendants-appellants.

Percy L. Julian, Jr., Madison, Wis., Michael A. Reiter, William M. Kunstler, Arthur Kinoy, New York City, Marc Stickgold, Detroit, Mich., Dennis Rob-

erts, Harriet Van Tassel, Newark, N. J., for plaintiffs-appellees.

Before KILEY, SWYGERT, and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from a declaratory judgment that disciplinary proceedings of the University of Wisconsin instituted on the basis of alleged "misconduct" are unconstitutional.

The named plaintiffs are ten students at the Madison campus of the University of Wisconsin and the Madison chapter of the Students for a Democratic Society. They brought this suit on October 16, 1967, for themselves and persons similarly situated. The defendants are various officials of the University of Wisconsin, the State of Wisconsin and the City of Madison allegedly involved in disciplinary actions on the Madison campus. The final complaint alleges the following pertinent facts:

On October 18, 1967, plaintiffs and others were protesting the presence of recruiting representatives of the Dow Chemical Corporation on the Madison campus. On the following day, the defendant Dean of Student Affairs wrote two of the plaintiffs and other "members of their class" that they were "suspended from the University pending a hearing before the Administrative Division of the Committee on Student Conduct and Appeals." The ground for the suspension was stated to be violation of Chapter 11.02 of the Laws and Regulations of the University of Wisconsin (see note 2, *infra*), and the students were informed that a hearing date would be set at a later time. By letter of October 21, 1967, the chairman of the Administrative Division advised them that the hearing would be held on November 2, and that they would be permitted to attend classes and write examinations in the interim.

On November 1, some of the plaintiffs, as well as other individuals, received "Amended Charges" from the chairman of the Administrative Division.[1] These charges specifically described the offensive conduct ascribed to plaintiffs, including the denial of others' rights to job interviews with the Dow Chemical Corporation by physical obstruction of the doorways and corridors of a university building. This behavior was characterized as "misconduct," as well as violative of Chapters 11.02 and 11.15 of the University Policies on the Use of Facilities and Outside Speakers (see note 2, *infra*).

The complaint further alleged that some of the defendants had previously expelled two plaintiffs and another member of their class "by application of the doctrine of 'misconduct'," and were threatening to suspend or expel others for "misconduct." This doctrine was alleged to be so vague and overbroad as to violate the rights of plaintiffs under the First and Fourteenth Amendments. The complaint requested a declaratory judgment that the defendants' misconduct doctrine on its face violated the United States Constitution and prayed for an injunction against further application of that doctrine as the basis for disciplinary proceedings.

For their part, defendants answered that the term "misconduct" "as a standard for disciplinary action by the University" did not violate any of the provisions of the federal Constitution.

The district court, in a scholarly opinion, held that the standard of misconduct alone may not serve as the foundation for the expulsion or suspension of students for any significant time.[2] 295 F.Supp.

1. The Amended Charges are reproduced in the Appendix.

2. The court also held that Chapter 11.02 of the Laws and Regulations of the Madison campus of the University of Wisconsin was unconstitutional by reason of overbreadth, and permanently enjoined its enforcement. Appellants have not challenged this ruling and we express no opinion on that issue. The validity of Chapter 11.15 was not involved below nor on this appeal. Chapters 11.02 and 11.15 are reproduced at 295 F.Supp. 991 and 982, note 1.

978. The court concluded that "misconduct", as so used, violates the Due Process Clause of the Fourteenth Amendment by reason of vagueness or, in the alternative, violates the First Amendment (as applied to the states by the Fourteenth Amendment) by reason of vagueness and overbreadth. Injunctive relief, however, was denied so that the University could have a reasonable time to readjust its regulations.[3]

■ Defendants raise several preliminary issues which challenge the power of the district court to entertain this action. They assert that the court lacked jurisdiction under the Civil Rights Act (42 U.S.C. § 1891 *et seq.*) because the record fails to disclose that the plaintiffs were engaged in constitutionally protected activities. We do not agree. Plaintiffs' conduct is not determinative of jurisdiction. The proper question here is whether defendants were depriving plaintiffs of any constitutional rights regardless of the character of their behavior. In our view, jurisdiction existed because the complaint alleged that defendants' use of the doctrine of misconduct as a basis for its disciplinary proceedings subjected plaintiffs to "deprivation of * * * rights [and] privileges * * * secured by the Constitution" (42 U.S.C. § 1983). Under the Declaratory Judgment Act (28 U.S.C. § 2201 *et seq.*), it became appropriate for the district court to determine the legality of the misconduct standard being employed by defendants in the Amended Charges of November 1. This was not an abstract question, for plaintiffs were being charged with "misconduct" and threatened with punishment. Whether plaintiffs were entitled to relief was to be decided after the court assumed jurisdiction over the controversy. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939; Sigafus v. Brown, 416 F.2d 105 (7th Cir. 1969); Snyder v. Board of Trustees, University of Illinois, 286 F.Supp. 927, 931 (N.D.Ill.1968; 3-judge court).

■ Likewise, the nature of the conduct attributed to plaintiffs has no effect on their standing to challenge the application of the misconduct doctrine as the basis for the proceedings taken against them. They are entitled to contend that the disciplinary proceedings were invalid deprivations of due process because based upon nonexistent or unconstitutionally vague standards. It is well settled that a statute threatening the exercise of First Amendment freedoms because of overbreadth is subject to attack

" * * * with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84 L.Ed. 1093; NAACP v. Button, 371 U.S. [415], at 432–433, 83 S.Ct. at 337–338, 9 L.Ed.2d 405; *cf.* Aptheker v. Secretary of State, 378 U.S. 500, 515–517, 84 S.Ct. 1659, 1668–1669, 12 L.Ed.2d 992; United States v. Raines, 362 U.S. 17, 21–22, 80 S.Ct. 519, 522–523, 4 L.Ed.2d 524. We have fashioned this exception to the usual rules governing standing, see United States v. Raines, supra, because of the ' * * * danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' NAACP v. Button, *supra*, 371 U.S. at 433, 83 S.Ct. at 338." Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22.

Nor can we agree with defendants that this exception to standing requirements is limited to cases presenting challenges to criminal statutes. Such a literal reading overlooks the main function of the exception. The thrust of cases such as *Dombrowski* lies in their attempt to counteract the "chilling effect upon the exercise of First Amendment rights" which may result from the very fact of

---

3. Plaintiffs have not appealed from the denial of the injunctive relief. At the oral argument we were advised that the University has subsequently redrafted its regulations but defendants do not contend that this case has become moot.

prosecution. Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116. Administrative sanctions as harsh as those available to the University in this case, as well as criminal statutes, serve to chill the exercise of free speech. It is accordingly immaterial that this controversy involves a disciplinary rule rather than a criminal statute.[4]

■■■ Turning to the merits, defendants contend that the "misconduct" doctrine does not constitute a "standard" of conduct and that it was not employed as such. They argue that "misconduct" represents the inherent power of the University to discipline students and that this power may be exercised without the necessity of relying on a specific rule of conduct. This rationale would justify the *ad hoc* imposition of discipline without reference to any preexisting standards of conduct so long as the objectionable behavior could be called misconduct at some later date. No one disputes the power of the University to protect itself by means of disciplinary action against disruptive students. Power to punish and the rules defining the exercise of that power are not, however, identical. Power alone does not supply the standards needed to determine its application to types of behavior or specific instances of "misconduct." As Professor Fuller has observed: "The first desideratum of a system for subjecting human conduct to the governance of rules is an obvious one: there must be rules." Fuller, Law and Morality, p. 46 (2d printing, 1965). The proposition that government officers, including school administrators, must act in accord with rules in meting out discipline is so fundamental that its validity tends to be assumed by courts engaged in assessing the propriety of

specific regulations. See Tinker v. Des Moines School District, 393 U.S. 503, 513–514, 89 S.Ct. 733, 21 L.Ed.2d 731. The doctrines of vagueness and overbreadth, already applied in academic contexts, presuppose the existence of rules whose coherence and boundaries may be questioned. *Cf.* Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L. Ed.2d 629; Snyder v. Board of Trustees, University of Illinois, 286 F.Supp. 927 (N.D.Ill.1968; 3-judge court); Buttny v. Smiley, 281 F.Supp. 280 (D.Colo.1968). These same considerations also dictate that the rules embodying standards of discipline be contained in properly promulgated regulations. University administrators are not immune from these requirements of due process in imposing sanctions. Consequently, in the present case, the disciplinary proceedings must fail to the extent that the defendant officials of the University of Wisconsin did not base those proceedings on the students' disregard of university standards of conduct expressed in reasonably clear and narrow rules.

■■■ Having specifically charged the students with the offense of "misconduct" (Appendix *infra*), the University may not now claim that misconduct was not employed as a standard. When tested as such, however, the term is clearly inadequate in view of constitutional requirements.[5] As the Supreme Court recently remarked concerning the use of the term in a jury instruction:

"If used in a *statute* which imposed forfeitures, punishments or judgments for costs, such loose and unlimiting terms [as 'misconduct' or 'reprehensible conduct'] would certainly cause the statute to fail to measure up to the requirements of the Due Process

---

4. Although the defendants also assert that this was not a proper class action, this matter has not yet been determined by the district court (295 F.Supp. at p. 983, note 4), and we do not reach the question. It may be noted that in somewhat similar circumstances class actions have been upheld. Snyder v. Board of Trustees, University of Illinois, 286 F.Supp. 927, 931 (N.D.Ill.1968; 3-judge court); see

also Swanson v. American Consumer Industries, 415 F.2d 1326 (7th Cir. 1969).

5. Whether misconduct alone is a permissible standard was not reached by this Court in Scoville v. Board of Education, (7th Cir. 1969); see also Grossner v. Trustees of Columbia University in City of N. Y., 287 F.Supp. 535, 552, note 25 (S.D.N.Y.1968).

Clause." Giaccio v. Pennsylvania, 382 U.S. 399, 404, 86 S.Ct. 518, 522, 15 L.Ed.2d 447.

The use of "misconduct" as a standard in imposing the penalties threatened here must therefore fall for vagueness. The inadequacy of the rule is apparent on its face. It contains no clues which could assist a student, an administrator or a reviewing judge in determining whether conduct not transgressing statutes is susceptible to punishment by the University as "misconduct." Since the misconduct standard is invalid on its face, it was unnecessary for the district court to make any findings with respect to plaintiffs' activities on October 18, 1967. Cf. Hammond v. South Carolina State College, 272 F.Supp. 947, 950 (D.S.C.1967). To the extent that Esteban v. Central Missouri State College, 290 F.Supp. 622, 630 (W.D.Mo.1968), affirmed, 415 F.2d 1077 (8th Cir. 1969), refuses to apply standards of vagueness and overbreadth required of universities by the Fourteenth Amendment we decline to follow it.

It is not an adequate answer to contend, as do defendants, that the particular conduct which is the object of university discipline might have violated an applicable state or local law or otherwise merited punishment. The issue here is not the character of the student behavior but the validity of the administrative sanctions. Criminal laws carry their own definitions and penalties and are not enacted to enable a university to suspend or expel the wrongdoer absent a breach of a university's own rule. Nor is "misconduct" necessarily confined to disruptive actions covered by criminal codes. The ability to punish "misconduct" *per se* affords no safeguard against the imposition of disciplinary proceedings overreaching permissible limits and penalizing activities which are free from any taint of impropriety. Hence we feel compelled to strike down the University's reliance on the doctrine of misconduct in order to ensure that "reasonable regulation of speech-connected activities [of students remains confined to] carefully restricted circumstances." Tinker v. Des Moines School District, 393 U.S. 503, 513, 89 S.Ct. 733, 740.

 Pursuant to appropriate rule or regulation, the University has the power to maintain order by suspension or expulsion of disruptive students. Requiring that such sanctions be administered in accord with preexisting rules does not place an unwarranted burden upon university administrations. We do not require university codes of conduct to satisfy the same rigorous standards as criminal statutes.[6] We only hold that expulsion and prolonged suspension may not be imposed on students by a university simply on the basis of allegations of "misconduct" without reference to any preexisting rule which supplies an adequate guide. The possibility of the sweeping application of the standard of "misconduct" to protected activities does not comport with the guarantees of the First and Fourteenth Amendments. The desired end must be more narrowly achieved.[7]

Affirmed.

---

6. Without expressing any opinion on the adequacy of the particular rules in question, we note that in at least two instances courts have approved of discipline based on broad regulations. In Buttny v. Smiley, 281 F.Supp. 280 (D.Colo.1968), for example, the court approved of a rule prohibiting "Hazing in all forms * *. Students who thus interfere with the personal liberty of a fellow student are rendered liable to immediate discipline." Hutt v. Brooklyn College, 68–C–691 (E.D.N.Y.1969), involved discipline based upon a rule requiring student obedience to the laws of the City, State and Nation.

7. The Annual Report of the Committee on Student Conduct and Appeals of October 2, 1967, recognized this in stating:
 "*Student Conduct Code.* In recent years it has become clear that a college education is of such significance that disciplinary action which prevents or interrupts that educational opportunity must be handled with great care and due process. However, at present the University disciplinary rules are unclear, consisting of a patchwork of

## APPENDIX

The Amended Charges were that the named students, including certain plaintiffs:

"I. Intentionally, denied to others their right to interview for jobs with the Dow Chemical Corporation and to carry out that purpose did:

"a. Intentionally, physically obstruct and block the hall and doorways of the first floor of the Commerce Building;

"b. Intentionally deny to persons who desired to interview with Dow Chemical Corporation their right to do so;

"c. Intentionally deny to others their right of ingress and egress through the hallway;

"d. Intentionally deny to other University students and other members of the University community their right to attend and conduct classes;

"e. Intentionally deny to other University students and other members of the University community their right to carry on University operations in offices of the Commerce Building.

"II. Intentionally incited and counselled others to deny to others their right to interview for jobs with the Dow Chemical Corporation and to carry out that purpose did intentionally incite and counsel others to:

"a. Physically obstruct and block the hall and doorways of the first floor of the Commerce Building;

"b. Intentionally deny persons who desired to interview with Dow Chemical Corporation their right to do so;

"c. Intentionally deny to others their right of ingress and egress through the hallway;

"d. Intentionally deny to other University students and other members of the University community their right to attend and conduct classes;

"e. Intentionally deny to other University students and other members of the University community their right to carry on University operations in Administrative offices of the Commerce Building.

"III. Intentionally refused repeated requests to move and to unblock the hall and doorways of the first floor of the Commerce Building for the purpose of denying to others their right to interview for jobs with the Dow Chemical Corporation with the result that:

"a. Other University students were denied their right to interview with Dow Chemical Corporation;

"b. Other University students and members of the University community were denied their right to ingress and egress through the hallway;

"c. Other University students and members of the University community were denied their right to attend and conduct classes;

"d. Other University students and members of the University community were denied their right to carry on University operations in the offices of the Commerce Building.

special regulations and broad statements of standards, often developed on an ad hoc basis, which fail to give students adequate notice. One means of approaching these goals of care and due process might be the development of a student conduct code, clearly setting out the duties and responsibilities of students and the disciplinary procedures applicable in case of violation. A number of other universities have developed such student codes. Therefore, the Committee recommends that desirability and feasibility of such a code for the Madison campus be studied, perhaps in relation to studies of the rule of student government which are now underway."

"All of the foregoing constituting:

"1. Misconduct, as well as

"2. A violation of Chapter 11.02, and 11:15 of the University Policies on Use of Facilities and Outside Speakers." [8]

---

8. The asserted violation of Chapter 11.02 and 11.15 is not involved in this appeal. (see note 2, *supra*).