**James CLARK, Treasurer of DuPage County, et al., Plaintiffs,**

v.

**Gerald R. WEEKS, Individually and as Chairman of the DuPage County Board of Commissioners, et al., Defendants.**

No. 75 C 2009.

United States District Court, N. D. Illinois, E. D.

Feb. 24, 1976.

Thomas P. Sullivan, Alan L. Metz and Jeffrey D. Colman, Jenner & Block, Chicago, Ill., Paul T. Kalinich, Glen Ellyn, Ill., for plaintiffs.

Terry M. Grimm and Ellen C. Newcomer, Winston & Strawn, Chicago, Ill., for defendants.

Before FAIRCHILD, Chief Circuit Judge, and DECKER and MARSHALL, District Judges.

DECKER, District Judge.

## MEMORANDUM OPINION

James Clark is the Treasurer of DuPage County. He was re-elected to that office on November 5, 1974, and his term of office runs until November 5, 1978. In April, 1975, an organization known as the DuPage Citizens Organization made public through the press and through meetings with members of the DuPage County Board (Board) allegations that Clark had obtained substantial personal loans during his term as

Treasurer from banks in which he had deposited County funds; had defaulted or was unable to service the debt on some of those loans; and had personally profited as a result of his holding the office of Treasurer in a manner in addition to the amount of his salary and remuneration as fixed by law.

In response to these allegations, and pursuant to Ill.Rev.Stat. ch. 36 § 15, which provides:

"If any county treasurer shall neglect or refuse to render an account, or make settlement at any time when required by law, or by the county board, or refuse to answer any question propounded to him by the county board, or is a defaulter, and in arrears with the county, or is guilty of any other misconduct in his office, the county board may remove him from office, and the presiding officer of the county board, with the advice and consent of the county board, may appoint some suitable person to perform the duties of treasurer until his successor is elected, or appointed and qualified; . . . .",

the Board passed Resolution F–842–75. The resolution directed the chairman of the Board to appoint a Special Investigative Committee (Committee)

"To make all inquiries, investigations, and to take testimony and receive documentation relating to the following:

a) To investigate and inquire into the activities of the County Treasurer in order to make findings of fact and to make a determination as to whether there is cause to remove the County Treasurer for any of the following reasons:

Neglect or refusing to render an account, or make settlement at any time when required by law, or by the county board.

Refusing to answer any question propounded to him by the county board.

Is a defaulter and in arrears with the County.

Is guilty of any other misconduct in his office.

b) To investigate and inquire whether there are activities of the County Treasurer which constitute a conflict of interest.

c) That said investigation shall also include, but not be limited to whether there has been a violation of the following statutes:

Chapter 36, Sections 36, 37, 38, which read[s] as follows:

The county treasurer shall retain no fees, commissions or other compensation whatsoever, except his salary or other compensation fixed by law, for his services when acting as such county treasurer or in any other official capacity incident to his incumbency of that office. . . .

No bank or other depositary holding county moneys deposited therewith by the county treasurer in accordance with the provisions in this act, or otherwise, and no officer of any such bank, depositary, or other person, shall pay to, withhold for the benefit of, or contract in any manner for the payment to such county treasurer, . . . of any interest or other fee, prerequisite or emolument, on account of the deposit of such county moneys, except such interest as shall be paid to such county treasurer for the benefit of the county. The making of a personal profit or emolument by the incumbent of the office of county treasurer or by any other county officer out of any county moneys by loaning, depositing or otherwise using or disposing of the same in any manner whatsoever, shall be deemed a Class 3 felony. Any county officer or other person who wilfully violates any provision of this act, other than that above specified in this section, or who wilfully neglects or refuses to perform any duty imposed upon such person by the terms of this act, shall be guilty of a Class 4 felony."

Pursuant to this Resolution, defendant Gerald R. Weeks, as chairman of the Board, appointed a Committee consisting of a majority of the members of the Board. De-

fendants Robert A. Morris and Frank H. Bellinger were appointed chairman and vice-chairman of the Committee, respectively. The Committee retained counsel, adopted rules of procedure and issued subpoenas duces tecum for certain of Clark's bank records. On June 19, 1975, before any of these subpoenas were returned or any witnesses were called by the Committee, Clark and Michael Dutton, who claims to have voted for Clark in November, 1974, filed this lawsuit.

In this action brought under 42 U.S.C. § 1983, plaintiffs claim that the part of Ill.Rev.Stat. ch. 36 § 15 which allows the Board to remove the County Treasurer from office for "other misconduct in office" is unconstitutionally vague on its face and thus deprives Clark of due process and Dutton of his right to vote (Count I); that the rules of procedure adopted by the Committee deprive Clark of his liberty and property and Dutton of his right to vote without due process (Count III); and that the subpoenas issued by the Committee violate Clark's Fourth and Fourteenth Amendment right to privacy (Count IV).[1] Plaintiffs seek declaratory and injunctive relief on each count.

On June 23, 1975, Judge Lynch, acting as emergency judge, issued a temporary restraining order which brought the Committee's activities to an abrupt halt. The order restrained defendants from:

" . . . enforcing as to JAMES CLARK Illinois Revised Statutes Ch. 36 § 15, DuPage County Board Resolution F–842–75 and the 'Rules of Procedure' promulgated by the DuPage County Board."

" . . . [or] from causing or accepting return on any subpoenas duces tecum

caused to be issued by the defendants or their counsel for the production of any documents pertaining to JAMES CLARK."

Judge Lynch also granted plaintiffs' application to convene a three-judge district court pursuant to 28 U.S.C. §§ 2281, 2284. On July 3, 1975, the temporary restraining order was continued in effect until such time as the three-judge court could hear and decide plaintiffs' motion for a preliminary injunction.[2]

Defendants have now moved to dissolve the temporary restraining order and to dismiss the complaint. Plaintiffs resist these motions and have moved for summary judgment on their claim that the statute under which the Committee is proceeding is unconstitutionally vague on its face. For the reasons set forth below, plaintiffs' motion for summary judgment is denied; defendants' motion to dismiss the complaint is granted with respect to plaintiffs' claim of unconstitutional vagueness; and this three-judge court is dissolved. The remaining issues in this case shall be decided by a single judge district court.

I.

Before proceeding to the merits of plaintiffs' claims, we must consider defendants' assertion that the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny require this court to refrain from taking any action in this case in deference to the proceedings pending before the DuPage County Board. The question is, of course, one which must be decided by a three-judge court. *Jones v. Wade,* 479 F.2d 1176, 1180 (5th Cir. 1973); *Abele v. Markle,* 452 F.2d 1121, 1125 (2d Cir. 1971); *cf. Steffel v. Thompson,* 415 U.S.

1. Plaintiffs also assert, in Counts II, IV and VI, each of these claims under the applicable provisions of the Illinois Constitution. Presumably, they seek to have this court assert pendent jurisdiction over those state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Supreme Court of Illinois had upheld the validity of ch. 36, sec. 15, Hurd's Stat. 1877, the predecessor statute, against challenges based on an

earlier Illinois Constitution. *Donahue v. County of Will,* 100 Ill. 94 (1881).

2. The continuance in effect of the temporary restraining order was appealed to the Court of Appeals, which dismissed the appeal on the grounds that once a three-judge court has been convened, application for vacation or modification of the temporary restraining order must be made to that court, not the Court of Appeals.

452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

■ *Younger* held that even where a federal plaintiff asserts a federal constitutional claim, a federal court may not, absent special circumstances, enjoin a pending state criminal prosecution. 401 U.S. at 43, 91 S.Ct. 746. While it is true that *Younger* has been extended to bar federal court injunctions against certain civil proceedings in the state courts, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Cousins v. Wigoda,* 463 F.2d 603, 606 (7th Cir. 1972), *Younger* has never been read to preclude a federal injunction against a state administrative proceeding which violates the federal plaintiff's civil rights. Administrative proceedings, such as those challenged in this case, clearly do not provide the "opportunity to raise and have timely decided by a competent state tribunal the federal issues involved," which is a prerequisite to *Younger* abstention. *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Thus, this court is not precluded by *Younger* from considering the merits of plaintiffs' claims.

## II.

■ Plaintiffs' challenge to Ill.Rev. Stat. ch. 36 § 15 is based on the well-established principle of constitutional law that a statute which forbids or requires the doing of an act "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). This requirement of statutory specificity is based on two concepts. First, due process requires that the citizenry be specifically informed of their rights, responsibilities and the legal prohibitions with which they must abide. *See*

Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). Second, due process requires that judges, jurors and other governmental decision-makers resolve disputes based on legally fixed standards. Thus, the due process clause condemns statutes which delegate unchartered discretionary powers to decision-makers charged with resolving disputes in which an individual's liberty is at stake. *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 165–171, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Farber v. Rochford,* N.D.Ill.1975, 407 F.Supp. 529.

■ We have no doubt that Ill.Rev.Stat. ch. 36 § 15 is sufficiently definite to withstand constitutional muster. The challenged language, which allows removal of Clark from his position as County Treasurer for "other misconduct in office" "was not written upon a clean slate [when the statute was enacted] and does not appear on a clean slate now." *Arnett v. Kennedy,* 416 U.S. 134, 160, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), (Opinion of Rehnquist, J.) The language of the statute is modified by a substantial body of case law and related statutory provisions.[3]

The case law is clear that "misconduct in office" and its equivalent term "official misconduct", to warrant removal from office,

". . . must have direct relation to and be connected with the performance of official duties and amount either to maladministration or to a willful and intentional neglect and failure to discharge the duties of the office at all. It does not include acts and conduct which, though amounting to a violation of the criminal laws of the state, have no connection with the discharge of official duties. The misconduct which will warrant removal of an

---

**3.** In considering a vagueness challenge to a statute, the language of the statute is not, of course, read in a vacuum, but, rather, in the context of any custom or judicial interpretation which may have refined the meaning of that language. *See, Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031

(1942); *Arnett v. Kennedy, supra; Sarisohn v. Appellate Division,* 265 F.Supp. 455, 458 (E.D. N.Y.1967); *cf. Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); and *compare Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), *with Bence v. Breier,* 501 F.2d 1185 (7th Cir. 1974).

officer must be such as affects his performance of his duties as an officer and not only such as affects his character as a private individual. In such cases it is necessary to separate the character of the man from the character of the office. The misconduct charged and established must be something which plaintiff did, or did not do, in his official capacity [citations omitted]." *Wilson v. Council of City of Highland Park,* 284 Mich. 96, 278 N.W. 778 (1938).

This definition of "misconduct in office" to include only wrongful acts or wrongful failures to act in the performance of the duties of office has been consistently accepted by the courts. *See e. g., Stanley v. Jones,* 197 La. 627, 2 So.2d 45 (1941); *People v. Hale,* 232 Cal.App.2d 112, 42 Cal.Rptr. 533, 538 (1965); *Commonwealth v. Green,* 205 Pa.Super. 539, 211 A.2d 5 (1965); *State v. Begyn,* 34 N.J. 35, 167 A.2d 161 (1961). *See also* 1 Burdick, *Law of Crime,* (1946) § 272, at 387; Perkins, *Criminal Law,* (1957) 409. Plaintiffs have cited no cases in which public officials have been removed from office on grounds of "official misconduct" where the conduct which led to removal was not closely related to the officer's performance of official duties.

Looking at the whole of Ill.Rev.Stat. ch. 36 § 15, and reading the challenged language *ejusdem generis,* support the conclusion that the statute is concerned only with a narrow category of misconduct. The three specifically enumerated types of misconduct which warrant removal of a county treasurer from office are all misconduct in the course of the performance of his official duties: failing to render an account as required by Ill.Rev.Stat. ch. 36 § 12; failing to answer questions as required by ch. 36 § 14; or being a defaulter and in arrears with the county. There is no indication that "other misconduct in office" extends to any other class of misconduct.

Thus, the meaning of "misconduct in office" is substantially more specific than the meaning of the general term "misconduct" which has been found too vague to be a constitutional basis for imposing punishment in several cases relied upon heavily by plaintiffs. In *Giaccio v. Pennsylvania,* 382 U.S. 399, 404, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), the Supreme Court found unconstitutionally vague a Pennsylvania statute which allowed a jury to assess costs against an acquitted criminal defendant where it found the defendant guilty of "misconduct" or other "reprehensible conduct". *Soglin v. Kauffman,* 418 F.2d 163 (7th Cir. 1969), declared unconstitutional the suspension of students from a state university for "misconduct"; and *Landman v. Royster,* 333 F.Supp. 621, 656 (E.D.Va.1971), held that state prisoners could not constitutionally be punished for "misbehavior".

In all of these cases, the scope of the term "misconduct" was totally unconfined, and punishment could have been imposed under the statutes and regulations found overly vague for any imaginable sort of human behavior, "so long as the objectionable behavior could be called misconduct at some later date". *Soglin, supra,* at 167. Considering the broad divergences of opinion in our pluralistic society over what constitutes proper behavior and what constitutes misconduct in many areas of behavior, there is no doubt that the unqualified term "misconduct" is a standard of conduct "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . ." *Connally v. General Construction Co., supra,* 269 U.S. at 391, 46 S.Ct. at 127.

Allowing the Board to remove Clark from office for "misconduct in office" is not, as shown above, an "unchartered" delegation to the Board of discretionary power to deprive Clark of his liberty and property, but, rather, limits the Board to consideration of Clark's performance of his official duties. Moreover, the area of the Board's inquiry is one in which the standards of proper conduct are well established. Chapter 36 of the Illinois Revised Statutes is concerned solely with the office of County Treasurer, and prescribes in some detail the powers and duties of that office. The standard of conduct which Clark must meet is further

detailed in Ill.Rev.Stat. ch. 38 § 33–3,[4] which defines "official misconduct" for the purposes of imposing criminal sanctions, and by the long-established law of fiduciary responsibility.

■ In sum, "misconduct in office" as used in Ill.Rev.Stat. ch. 36 § 15 concerns only those acts or failures to act which are directly related to the performance of a county treasurer's official duties. The standards of conduct for the performance of these official duties are sufficiently well established to enable Clark, as a man of common understanding, to easily conform his conduct to them. Consequently, his claim that ch. 36 § 15 is unconstitutionally vague is without merit.

Plaintiffs' motion for partial summary judgment is denied. Defendants' motion to dismiss is granted with respect to Counts I and II.

### III.

The only claim made by plaintiffs which must be considered by a three-judge court is that of the unconstitutional vagueness of Ill.Rev.Stat. ch. 36 § 15. Plaintiffs' other claims are not challenges to "state statutes of general and statewide application", *Moody v. Flowers,* 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), but concern only the actions of local officials and can be heard by a single judge district court. Consequently, defendants' motions to dismiss the remaining counts of the complaint and to dissolve the temporary restraining order are continued to be heard by the single district judge to whom this case is assigned.

There no longer being any issue in this case which must be heard by a court of three judges, this court is hereby dissolved.

---

4. Ill.Rev.Stat. ch. 38, § 33–3 provides:
   "Official Misconduct
   "A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
   (a) Intentionally or recklessly fails to perform any mandatory duty as required by law; or
   (b) Knowingly performs an act which he knows he is forbidden by law to perform; or

(c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or
(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.
"A public officer or employee convicted of violating any provision of this Section forfeits his office or employment. In addition, he commits a Class 4 felony."