Dewayne **LINWOOD**, a minor by Elease Linwood, his mother and next friend, on behalf of himself and all other persons similarly situated, Plaintiff-Appellant,

v.

The **BOARD OF EDUCATION OF** the **CITY OF PEORIA, SCHOOL DISTRICT NO. 150, PEORIA COUNTY, ILLINOIS,** Defendant-Appellee.

No. 71–1541.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1972.

Decided June 16, 1972.

---

Whitney D. Hardy, Peoria, Ill., for plaintiff-appellant.

W. McD. Frederick, David J. Walvoord, Peoria, Ill., Kavanagh, Scully, Su-

dow, White & Frederick, Peoria, Ill., of counsel, for defendant-appellee.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

The plaintiff-appellant, Dewayne Linwood, a fifteen year old high school student, by his mother and next friend, instituted this action [1] against the defendant Board of Education on behalf of himself "and all other persons and students of School District No. 150, Peoria County, Illinois, similarly situated". The complaint alleged, inter alia, that the appellant, a student enrolled at Peoria Manual High School which is operated by the defendant-appellee Board was suspended on September 10, 1970 for a period of 7 days pursuant to Ill.Rev.Stat. 1969, ch. 122, § 10–22.6, without first being granted a hearing, or opportunity to make any statement in his own behalf; that appellant was not permitted to make up any test or work which occurred during the suspension period; that following his return to school a hearing was held on September 29, 1970 and appellant was advised on October 13, 1970 that he was expelled until January 18, 1971 (the commencement of the next school semester); and that Section 10–22.6 of the Illinois School Code (Ill.Rev.Stat.1969, ch. 122, § 10–22.6) [2] which purports to give Illinois school boards the power to provide for the suspension of and to expel students violates the due process and certain other provisions of the Illinois Constitution and the 5th, 6th and 14th Amendments to the United States Constitution. The complaint sought a declaratory judgment that § 10–22.6 is unconstitutional; mandatory injunctive relief to compel that appellant and other students suspended or expelled during the 1970–1971 school year be reinstated, be permitted to take all tests and courses missed, and receive credits accordingly; that records relating to the suspensions and expulsions be either destroyed or be impounded by the court; and that the appellant be awarded monetary damages.

The defendant-appellee filed an answer supported by attached exhibits which included the written notice given to apellant's mother of the hearing scheduled for September 29, 1970 to determine whether the appellant should be expelled and which advised her that appellant was charged with gross disobedience and misconduct for allegedly attacking and striking other students in the halls of the school on September 10, 1970; the defendant Board's definitions and rules pertaining to student discipline [3] and its

1. The complaint was filed in the Circuit Court for the Tenth Judicial Circuit of Illinois on December 18, 1970. The cause was removed to the District Court by the defendant without objection from the plaintiff.

2. Insofar as here pertinent, § 10–22.6 provided that the Board of Education shall have the power:

"(a) To expel pupils guilty of gross disobedience or misconduct, and no action shall lie against them for such expulsion. Expulsion shall take place only after the parents have been requested to appear at a meeting of the board, or with a hearing officer appointed by it, to discuss their child's behavior. Such request shall be made by registered or certified mail and shall state the time, place and purpose of the meeting. The board, or a hearing officer appointed by it, at such meeting shall state the reasons for dismissal and the date on which the expulsion is to become effec-

tive. If a hearing officer is appointed by the board he shall report to the board a written summary of the evidence heard at the meeting and the board may take such action thereon as it finds appropriate.

(b) To suspend or by regulation to authorize the superintendent of the district or the principal of any school to suspend pupils guilty of gross disobedience or misconduct for a period not to exceed 7 days or until the next regular meeting of the board, whichever first occurs, and no action shall lie against them for such suspension. * * *"

3. The Board's rules on student discipline provided that a physical assault constituted disobedience or misconduct gross enough to warrant disciplinary action which for major or repeated offenses might take the form of suspension with recommendation for expulsion. The authority to suspend as a disciplinary measure is delegated to the school principal.

procedures governing suspensions and expulsions;[4] the transcript of proceedings and evidence at the September 29, 1970 hearing (a copy of which had been furnished to appellant without cost pursuant to the Board's policy); and the record of the Board's action at its October 12, 1970 meeting expelling the appellant. The defendant moved for summary judgment on the pleadings. The District Court, after ruling that the plaintiff-appellant's action failed to qualify under Rule 23 of the Federal Rules of Civil Procedure as a valid class action, granted the defendant Board's motion for summary judgment and dismissed the cause. The plaintiff-appellant prosecuted this appeal.

4. The Board's rules governing the procedures for expulsion were as follows:

"EXPULSION OF PUPILS

Students may be expelled from the Peoria Public Schools in accordance with the provisions of Section 10–22.6 of the Illinois School Code. The following procedures shall be followed in considering a student for expulsion:

1. After investigating a recommendation by a school principal that a student be expelled, the Superintendent shall, if he concurs with the recommendation, send a registered letter to the parents of the student notifying them:

   A. That the student will be called before a hearing officer for the purpose of hearing the evidence of the alleged misconduct for which the expulsion is recommended.

   B. That the hearing will be held in private session at a specified time and place.

   C. That the student may be represented at the hearing by his parents and/or an attorney, if the student desires, and that he may present such evidence to refute the charges as he desires.

2. Expulsion hearings shall be conducted by an attorney chosen from a pool of three attorneys selected by the President of the Peoria Bar Association and approved by the Board of Education.

3. The expulsion hearings shall be held in the Board Room of the Administration Building.

4. The Superintendent shall notify board members of the date and time of an expulsion hearing. Members of the Board of Education may be present for the hearings and may question witnesses.

5. A court reporter shall be employed to take down all the testimony. This record of testimony shall be typed and copies of it given to members of the Board of Education.

6. The final determination of the Board of Education as to whether a student shall be expelled shall be arrived at after discussing the evidence in executive session. Final action by the Board shall be taken in public session.

7. Only the following persons may be present at the hearing: the student and his parents or guardians, board members, witnesses, the school principal, the administrative assistant and/or the dean, the Superintendent and Associate and Assistant Superintendents, and attorneys for the student and for the school district.

8. General rules of evidence shall be adhered to. However, the hearing should be more informal than a full adversary hearing, but officials of the school district or its attorney and the student, his attorney, and/or his parents have the right to cross-examine witnesses.

9. There can be a short opening statement to acquaint the hearing officer of the basic proposition for both sides and to inform him of the witnesses who will be called.

10. There will be no closing arguments by Counsel.

11. The student's disciplinary and scholastic record not related to the incident leading to the expulsion charge, is not admissible at the hearing as having any effect or bearing on proof or disproof of the charge as made. The record will be made available to the Board, however, if it has reached a conclusion of guilt on the part of the student, for use in its deliberations as to the severity of the penalty to be imposed.

12. The penalty imposed by the Board may be expulsion for any given period of time. This could be until the beginning of the next semester or the next school year, or longer."

Appellant seeks reversal of the judgment below on the grounds the District Court erred in its holdings that § 10–22.6 is constitutional, and was constitutionally applied in the instant matter; the Board's decision expelling appellant is supported by the record; and no genuine issue as to a material fact precluded the entry of a summary judgment.

■ With respect to the constitutional validity of § 10–22.6 the principal contentions of the appellant are that the section violates the due process of law requirements of the 14th Amendment to the United States Constitution and Article II, Section 2 of the Illinois Constitution by authorizing school boards to make disciplinary suspensions or expulsions of students for "gross disobedience or misconduct" and by not requiring that a suspension for 7 days or less be preceded by a formal hearing.[5]

The appellant in urging that the use of the language "gross disobedience or misconduct" in § 10–22.6 has the effect of making the section so vague and indefinite in its meaning and application that it fails to meet the tests of due process refers to the decision of this Court in Soglin v. Kauffman, 7 Cir., 418 F.2d 163. In that case the state university students involved were charged with "misconduct" and were being threatened with suspension or expulsion as punishment therefor. The university argued that its inherent power to discipline its students could be exercised without the necessity of relying on preexisting specific rules of conduct. Judge Cummings, speaking for the Court, aptly observed (418 F.2d at 167) that "[p]ower alone does not supply the standards needed to determine its application to types of behavior or specific instances of 'misconduct' ". The Court recognized that the sanctions of suspension or expulsion may be applied by school authorities for properly proscribed misconduct, pointed out that school codes of conduct need not satisfy the same rigorous standards as criminal statutes, and carefully limited the scope of its holding, stating (418 F. 2d at 168):

"We only hold that expulsion and prolonged suspension may not be imposed on students by a university simply on the basis of allegations of 'misconduct' without reference to any preexisting rule which supplies an adequate guide."

Again, in Whitfield v. Simpson, (D.C. E.D.Ill.) 312 F.Supp. 889, Judge Cummings, although speaking in dissent and expressing the view that the term "gross disobedience or misconduct" used in § 10–22.6 was, of itself, insufficient to sup-

---

5. The appellant makes the additional contention that the provisions of § 10–22.6 which grant immunity from legal action to a school board member or school official for such suspension or expulsion violate the ban against "special" or "local" laws imposed by Article IV, Section 22 of the Illinois Constitution of 1870, and continued in Article IV, Section 13 of the Illinois Constitution of 1970 (effective July 1, 1971). But inasmuch as the statute is state-wide in its application and embraces what appears to be a rational classification we perceive no merit in this contention. And, more important here, neither a board member nor a school official is a party to this suit. Thus there is no actual controversy between adversely interested parties presented which would support a declaratory judgment embracing the issue the appellant so seeks to tender.

Likewise, in our opinion, neither the objective of providing an "efficient system of free schools, whereby all the children of the State may receive a good common school education" expressed in Article VIII, Section 1 of the Illinois Constitution of 1870, nor the enunciation contained in Article X, Section 1 of the Illinois Constitution of 1970 (effective July 1, 1971) that "[a] fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities" supports appellant's argument that suspension or expulsion is no longer a permissible measure which may be availed of by public school authorities because the student from the non-affluent family is thereby deprived of continuing his education during the period of suspension or expulsion in contravention of the declared constitutional goal of his educational development to the limit of his capacity. We see no basis for reading such a restriction on permissible disciplinary measures into the quoted language.

ply a standard for the expulsion of a high school student, went on to state (312 F. Supp. at 898):

> "Plaintiff's expulsion might have been sustainable had the School Board given content to 'gross disobedience or misconduct' through reasonably narrow rules or regulations. Chapter 122, Section 10–20.5, Illinois Revised Statutes, vested the Board with the power to 'adopt and enforce' such rules. Construed as a standard for the School Board's exercise of that rule-making authority, 'gross disobedience or misconduct' might well be constitutional. See Panama Refining Co. v. Ryan, 293 U.S. 388, 420–430, 55 S.Ct. 241, 79 L.Ed. 446; cf. Kent v. Dulles, 357 U.S. 116, 127–129, 78 S.Ct. 1113, 2 L.Ed.2d 1204."

■ Thus, as Judge Cummings indicated in *Whitfield*, the rationale of *Soglin* that inherent power of a state university to maintain student discipline affords a constitutionally acceptable basis for it to suspend or expel students for misconduct providing preexisting rules reasonably define and interdict the conduct which may be so penalized, by a parity of reasoning equally dictates that a legislative enactment authorizing local school boards to utilize suspension or expulsion as disciplinary measures for "gross disobedience or misconduct" be recognized as a constitutionally acceptable basis for the imposition of such sanctions for conduct reasonably defined and proscribed by a local school code governing student conduct. And such is the case here. The Board's code of student conduct defined physical assault as gross disobedience or misconduct warranting suspension or expulsion.

In our judgment § 10–22.6 was not intended to be a self-executing regulation of student conduct. It is but a grant of power to local school boards. It does not purport to define or proscribe specific acts or omissions which may be penalized by suspension or expulsion. But it does furnish the local school authority with a general guideline or standard— that student disobedience or misconduct must be "gross" to justify its being made a ground for suspension or expulsion. When it is considered in the context of the nature of the subject matter involved and the express "duty" imposed on local school boards by a companion section of the same enactment . (Ill.Rev.Stat.1969, ch. 122, § 10–20.5) "[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district", this general standard, although insufficient in and of itself to operate as a rule to govern the actions of students, is adequate to guide the local school board in defining the specific acts for which it proposes to apply the sanctions of suspension or expulsion. Legislative enactments are not to be construed in a vacuum but in the context in which they appear and in the light of their intended purpose, and if susceptible of two interpretations—one of which would invalidate the enactment —the other and valid interpretation must be adopted. We do so here, and hold that § 10–22.6 is not invalid as a vague proscription of student conduct, but is to be implemented by appropriate rules adopted by the local school board to reasonably define and interdict the acts or omissions which may be penalized by suspension or expulsion. However, we do not hold that a student would have standing to challenge § 10–22.6 if he has committed misconduct truly gross by any standard.

■ It is apparent from the provisions of § 10–22.6 no expulsion, nor suspension for a period in excess of 7 days, is to be made unless preceded by a hearing held pursuant to notice of the time, place and purpose of the hearing. But appellant contends that the statute is constitutionally deficient from the standpoint of substantive and procedural due process, and lack of equal protection of law, in not requiring similar safeguards where a suspension of 7 days or less is imposed. We are of the view that a suspension for so relatively a short period for reasonably proscribed conduct is a minor disciplinary penalty which the legislature may elect to treat differently

from expulsion or prolonged suspension without violating a constitutional right of the student. *Cf.* Williams v. Dade County School Board, 5 Cir., 441 F.2d 299. Certainly, the imposition of disciplinary measures such as after-school detention, restriction to the class-room during free periods, reprimand, or admonition does not *per se* involve matter rising to the dignity of constitutional magnitude. We conclude that insofar as the requirement of a hearing is concerned it was within the discretion of the lawmakers to equate suspensions of 7 days or less with other minor disciplinary penalties although they did reserve the imposition of this particular sanction to school officials with supervisory status.[6]

■ Appellant's contention that § 10–22.6 is constitutionally infirm because of its failure to provide for an appeal from or judicial review of the Board's decision is not well taken. Although board action taken under § 10–22.6 is not brought within the purview of the Illinois Administrative Review Act (Ill.Rev.Stat. 1969, ch. 110, § 265) it is reviewable by common-law certiorari. See: I.L.P., Administrative Law and Procedure, § 42.

Appellant additionally urges that with respect to his expulsion until the January 1971 school term both the statute, and the Board's procedure in applying it to him, deprived him of rights he claims are essential to due process. In this connection we have already pointed out that § 10–22.6 requires that any expulsion be preceded by notice and hearing, and we have set forth (footnote 4, ante) the Board's rules governing the procedure to be followed in considering a student for expulsion. Appellant makes no complaint as to the adequacy of the notice given of the hearing nor does he contend that the Board did not follow its rules of procedure. On the record before

us he could not successfully do so. In this connection the record discloses that on September 24, 1970, the appellant's mother received notice from the Board in the form of a letter sent by certified mail. The letter gave notice that a hearing would be held at 7:00 p. m., September 29, 1970, in the board room of the Administration Building of the Peoria Public Schools, 3202 North Wisconsin Avenue, to determine whether or not the appellant was to be expelled from the Peoria Public Schools. The notice set forth the charges; advised that the hearing would be private in accordance with the Board's policy on expulsions, a copy of which was enclosed; advised that evidence could be presented in refutation of the charges; and that appellant could be represented by an attorney. On September 29, 1970; the hearing was held before a local attorney acting as the hearing officer, and a transcript of the proceeding was made by a court reporter and appellant furnished with a copy. The appellant was represented by counsel. The appellant, his mother, and his brother were present at the hearing. Witnesses were presented by both the appellant and the school administration. Opportunity for cross-examination was afforded. One student testified that the appellant struck him without provocation and a teacher testified that he saw appellant strike another student without apparent provocation. This testimony was contradicted by the appellant's own testimony and testimony of his mother with respect to what appellant told her about the incidents. On October 12, 1970, at a meeting of the Board, after review of the hearing transcript, by a 6 to 1 vote the appellant was expelled for the balance of the semester then in progress, and notified accordingly.

■ The fundamental requisite of due process is the opportunity to be

---

6. In his complaint the appellant alleged that "pursuant to such statute [§ 10–22.-6] the plaintiff was suspended from Manual High School on September 10, by written notice signed by the Dean of Boys". On appeal he argues that this initial 7 day suspension, after which he returned to

school, was invalid because it was not signed by the superintendent of the district or the principal of the high school. He neither raised nor argued this point below. We, therefore, deem it waived and will not consider it on this appeal.

heard. Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363. The hearing must be at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62. Here the statute required a hearing preceded by notice of the time, the place, and the purpose. And, the Board's procedural rules, and the manner of their application to the appellant, were in our judgment constitutionally adequate. The Board's rules of procedure mandated, and the appellant received, timely and adequate notice of the charges, with a reasonable opportunity to prepare for and meet them; an orderly hearing in keeping with the nature of the subject matter involved; the right to be represented by counsel, to call and examine witnesses, to cross-examine the opposing witnesses; and consideration of the evidence by an impartial tribunal with action based thereon. The type of administrative hearing here involved need not take the form of a judicial or quasi-judicial trial. Due process in the context here involved is not to be equated, as appellant urges, with that essential to a criminal trial or a juvenile court delinquency proceeding. Cf. Madera v. Board of Education of City of New York, 2 Cir., 386 F. 2d 778; Dixon v. Alabama State Board of Education, 5 Cir., 294 F.2d 150. Thus, we reject appellant's argument that he was entitled to a public hearing; appointment of counsel at public expense; process to compel the attendance of winesses; proof of the charges beyond a reasonable doubt; and a unanimous decision. Nor, as he additionally urges, was he entitled to a hearing under procedures which include rules providing that the student is to be furnished within a reasonable time prior to the hearing with a list of the names and addresses of the witnesses who are to testify, and information with respect to the testimony each will give; providing that the hearing is to be conducted by a panel of impartial persons other than the board members, each of whom will be present during all of the testimony; and requiring that the decision is to be made in the form of a written opinion incorporating findings of fact upon which it is based.

■■ The appellant's remaining contention [7] is that an issue as to whether the evidence adduced at the hearing supports the Board's action in expelling him presented a genuine issue as to a material fact which precluded the District Court's entry of a summary judgment. The complaint does assail the constitutional adequacy of the hearing and decisional procedures because of failure to provide that to warrant expulsion the charge be proved beyond a reasonable doubt. But this presented a legal issue with respect to the standard of proof to be required—not a factual issue. Moreover, examination of the transcript demonstrates that the Board's conclusion was not contrary to the manifest weight of the evidence. And insofar as sufficiency of the evidence to sustain administrative action is concerned that is the recognized Illinois test. Cf. Drezner v. Civil Service Commission, 398 Ill. 219, 75 N.E.2d 303; Schwarze v. Board of Fire & Police Com'rs., 46 Ill.App.2d 64, 196 N.E.2d 724. And it presents no federal constitutional problem.

The judgment order of the District Court is affirmed.

Affirmed.

---

7. In view of the conclusion we reach herein we do not find it necessary to consider appellant's contention that the court erred in ruling that the action fails to qualify as a valid class action other than to note that Rule 23(a) (4) of the Federal Rules of Civil Procedure requires that a representative party will fairly and adequately protect the interest of the class, and that while the complaint purports to include all students of the district similarly situated, the record discloses that appellant seeks to represent only students from certain classes of families, such as those receiving Social Security and poor or economically underprivileged families, *i. e.*, families receiving State Public Assistance, local Township Assistance (General Assistance), or whose income falls below Federal standards defining poverty.