Sandra REMER, Plaintiff,

v.

BURLINGTON AREA SCHOOL DISTRICT, Larry Anderson, William Campell, Scott Barret, Patricia Snyder, David Steighner, Paul Mantey, Jeremy Fitch, Jose Martinez, Ron Jandura, and Richard Peterson, Defendants.

No. 99–C–209.

United States District Court, E.D. Wisconsin.

June 4, 2001.

Willie J. Nunnery, Nunnery Law Office, Madison, WI, for plaintiff.

Mitchell S. Moser, Gary M. Ruesch, Quarles & Brady, Milwaukee, WI, for defendants.

## ORDER

STADTMUELLER, Chief Judge.

### BACKGROUND

In November 1998, Sandra Remer's tenth-grade son, M.R., and four other Burlington High School students hatched a plot to bring several guns to school and then to shoot certain administrators and students. Acting on information from a confidential informant, Burlington police officers were able to foil the plot two days before the planned siege. The day after the informant revealed the plot, police officers briefed Burlington High School's principal and assistant principal on the matter and, based on information provided by the police, the school administrators suspended M.R. from school for five days for his role in the planned attack.

In the days after word of the plot surfaced, the five students were the subjects of police and school investigations. Ms. Remer hired attorney Terrence Rose to represent M.R. throughout these investigations. After Ms. Remer retained Mr. Rose, Burlington High School's assistant principal Richard Peterson contacted Ms.

Remer by letter to inform her that M.R.'s suspension would be extended pending the outcome of an expulsion hearing before the Burlington Area School District's school board. Responsibility for arranging the expulsion hearing passed to the district's superintendent, Ron Jandura. On November 24, Superintendent Jandura sent a letter to M.R. informing him that the expulsion hearing would be held on December 1. The letter stated that "[t]he allegation and basis for the expulsion hearing is your part in the conspiracy to shoot and injure students and staff on November 16, 1998." The letter informed M.R. that he had the right to legal representation at the hearing and that he could present exculpatory or mitigating evidence at that time, including witnesses willing to testify on his behalf.

Meanwhile, as the Burlington High School administration set the expulsion process in motion, the school district's attorneys filed a civil complaint against M.R. in the Circuit Court of Racine County. Through its lawsuit, the district sought to obtain a declaratory judgment, as well as a temporary restraining order ["TRO"] and injunction preventing M.R. from contacting the school district or coming within 200 yards of any district property "for as long as [M.R. is] suspended and for the length of any future expulsion." The circuit court granted the TRO, and a November 30 hearing date was set to address the injunction. When it later became impossible for the circuit court to hold its hearing on November 30 as planned, M.R., through Mr. Rose, agreed to extend the temporary restraining order until such time as the hearing could be held.

In its own investigation, the Burlington Police Department determined that at some point prior to police intervention M.R. informed his cohorts that he no longer wished to participate in the planned siege. The fact that M.R. had backed out of the plan was confirmed in an interview with J.R., the purported ringleader of the group, as well as in an interview with M.R. himself. The police informed Burlington High School principal José Martinez and vice principal Richard Peterson of this fact. The police also informed Martinez and Peterson that they had been targets of the planned attack.

On November 30—the day before M.R.'s expulsion hearing—Mr. Rose faxed Mitchell Moser, the district's attorney, inquiring into the effect of the stipulated TRO on M.R.'s ability to testify. Mr. Moser responded to Mr. Rose via fax the next morning, stating, "because we want the hearing to be in an appropriate and comfortable setting for all parties, including your client, we want to make it clear that we have invited your client to the hearing tonight and that it is appropriate for him to attend. As your client's suspension will end tonight, regardless of the outcome of the expulsion hearing, your client's attendance at the hearing is actually consistent with the provisions of the Extended TRO. As a result, it is the district's position that your client's attendance at the hearing tonight would not violate the Extended TRO."[1]

1. The full text of the body of Mr. Moser's December 1, 1998, fax, submitted to the court as Exhibit L to Superintendent Jandura's affidavit, is as follows:

Thank you for your fax yesterday indicating the status of John Doe A (S.J.).

With the expulsion hearing set for this evening at the Burlington Middle School Library, I wanted to reassure you that it is appropriate for your client M.R. to attend the hearing. Although we have entered into the Extended TRO which would prohibit your client from approaching or entering the Middle School, the District has expressly invited your client to the Middle School tonight for the express purposes of the expulsion hearing. The Extended TRO will remain in force and we still intend to

On December 1, the district's school board[2] held the planned expulsion hearing for M.R. Neither the Remers nor Mr. Rose elected to attend the hearing. Nonetheless, Principal Martinez presented the school board with evidence related to M.R.'s participation in the alleged plot. This evidence included an oral summary of Principal Martinez's meetings with the police, an oral summary of his personal review of an audiotape on which one of M.R.'s co-conspirators indicated M.R. was involved in the formulation of the plan to shoot administrators and students, reports from the police investigation into the matter, and a copy of the delinquency petition filed by the Racine County District Attorney's office against one of M.R.'s co-conspirators and describing the actions of all five alleged participants. Principal Martinez specifically mentioned that the evidence suggested M.R. had backed out of the plan before the police became involved, and School Board President Larry Anderson stated at his deposition that he was well aware of that fact. Principal Martinez did not tell the school board that the Racine County District Attorney had decided against bringing criminal charges against M.R., however, although he allegedly knew that to be the case. M.R., of course, did not personally present any exculpatory or mitigating evidence.

At the conclusion of the December 1 meeting, the school board voted to expel M.R. until 2003, the year M.R. will turn 21 years old. Before reaching that decision, the school board debated, among other things, whether the readmittance of M.R. to Burlington High School would present a danger to the health or safety of students and staff at the school, including himself. The length of the expulsion was based on a proposal by Principal Martinez and Superintendent Jandura and apparently was designed to prevent M.R. from returning to Burlington High School as a student. The expulsion not only prevents M.R. from obtaining an education in the Burlington School District,[3] but bars him from entering district property during the period of the expulsion. Mr. Anderson said that the primary motivating factor in his decision to vote for expulsion was the fact M.R. did not inform anyone of the ongoing conspiracy, thus needlessly putting dozens of lives at risk.

Several weeks after receiving notice of her son's expulsion, Ms. Remer retained another attorney, Willie J. Nunnery, to represent her and her son. Mr. Nunnery

vigorously pursue a Temporary Injunction for the length of any future expulsion, if any; still, because we want the hearing to be in an appropriate and comfortable setting for all parties, including your client, we want to make it clear that we have invited your client to the hearing tonight and that it is appropriate for him to attend. As your client's suspension will end tonight, regardless of the outcome of the expulsion hearing, your client's attendance at the hearing is actually consistent with the provisions of the Extended TRO. As a result, it is the District's position that your client's attendance at the hearing tonight would not violate the Extended TRO.

Please contact me should you have any questions regarding the Extended TRO or our efforts in obtaining a Stipulated Injunction.

2. At the time of the expulsion hearing, the school board consisted of the named individual defendants (excluding Superintendent Jandura, Principal Martinez, and Vice Principal Peterson, who also have been named as defendants),

3. Under Wisconsin state law, a school district bears no responsibility for providing an education to expelled students. See Susan Marie H. v. Kenosha Unified School District, State Superintendent of Public Instruction Decision and Order No. 157 (June 28, 1988); Ricardo S. v. School District of Wisconsin Rapids, Superintendent of Public Instruction Decision and Order No. 145 (Sept. 5, 1986).

sent a letter to Superintendent Jandura requesting the school board to reconsider its decision to expel M.R. The school board denied Mr. Nunnery's request. Then, in February 1999, M.R. and his mother, acting through their first attorney, Terrence Rose, stipulated to an injunction in the state circuit court. (The circuit court had not yet held a hearing on the school district's injunction request at that point.) The terms of the stipulated injunction were that "[M.R.] shall be enjoined from calling the Burlington Area School District, or any of its facilities, until [M.R.] attains the age of 21," and that "[M.R.] shall be enjoined from going on the property of any Burlington Area School District facility, including Burlington High School ... until [M.R.] attains the age of 21."

On March 3, Ms. Remer filed a Section 1983 lawsuit in this court, alleging that the district and the individual members of the school board had deprived M.R. of due process of law in their handling of his expulsion. In her amended complaint, Ms. Remer further alleges that Mr. Jandura and Mr. Martinez conspired to deprive M.R. of his liberty interest in a public education. Ms. Remer seeks compensatory and punitive damages, injunctive and declaratory relief, and M.R.'s reinstatement into Burlington High School.

Shortly after Ms. Remer filed her lawsuit, the court held a hearing on her request for a temporary restraining order to allow M.R. to return to school. Noting that M.R.'s reinstatement to Burlington High School would be barred by the stipulated injunction entered by the state circuit court, the court raised the possibility that the *Rooker–Feldman* doctrine precluded federal jurisdiction over the case. After the parties had an opportunity to address the court's concerns, the court dismissed the lawsuit in a written order

dated March 30, 1999. It was the court's position that the stipulated injunction entered by the state court amounted to a "de facto" expulsion of M.R. As *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), preclude lower federal courts from adjudicating claims seeking review of state court judgments or claims "inextricably intertwined" with state court determinations, the court concluded that it did not have jurisdiction to hear Ms. Remer's case. The court reasoned that a ruling on the merits of Ms. Remer's federal lawsuit would be a judgment on the validity of the stipulated injunction itself, and that the court lacked subject matter jurisdiction to make such a judgment.

Ms. Remer appealed. In an order dated March 28, 2000, the Seventh Circuit Court of Appeals reversed this court's decision and remanded for further proceedings. The Seventh Circuit found that although the court would be powerless to grant Ms. Remer relief in the form of M.R.'s reinstatement to Burlington High School, the stipulated injunction barring that result and the school district's expulsion were not necessarily "inextricably intertwined." *See Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir.2000). Noting that in Wisconsin an expulsion not only prevents a student from attending public school, but also prevents him from obtaining a public education in that district in any form whatsoever, the Seventh Circuit ruled that Ms. Remer can pursue her lawsuit to seek relief for this additional injury. *See id.* at 998.

After remand to this court, the lawsuit proceeded apace, and, on January 10, 2001, the defendants moved for summary judgment. The motion has been fully briefed and is ready for adjudication by the court.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.

Only "genuine" issues of "material" fact will defeat an otherwise proper motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *See id.* The trial court's function at this juncture is to determine whether there is a genuine issue for trial—not to weigh the evidence or determine the truth of the matter. *See id.* at 249–50, 106 S.Ct. 2505.

The moving party has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law by informing the court of those portions of the record or affidavits that demonstrate an absence of a triable issue. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party may meet its burden by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. If the moving party meets its burden, the nonmoving party must present specific facts showing the existence of a genuine issue of material

fact in order to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Here, Ms. Remer's lawsuit is premised on an alleged violation of her son's due process rights.[4] In their motion for summary judgment, the defendants claim that M.R. received all the process he was due. They further assert that even if there was a violation of M.R.'s due process rights, those rights were not clearly established at the time of the 1998 expulsion hearing and that the individual defendants are therefore entitled to immunity from judgment. Neither the plaintiff nor the defendants dispute the facts as set out in the Background section above. It is therefore this court's duty to determine if, on the state of the facts before the court, a genuine issue exists for trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 ("the availability of summary judgment turn[s] on whether a proper jury question [i]s presented")(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

The court begins its analysis by noting that M.R. was certainly entitled to the protections of the Fourteenth Amendment during his expulsion proceedings. The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally "not created by the Constitution. Rather, they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct.

---

4. Ms. Remer's conspiracy claim, while technically distinct from her due process claim, is premised on the allegation that Superintendent Jandura and Principal Martinez conspired to deprive M.R. of his due process rights. Thus, the two claims are inextricably intertwined.

729, 42 L.Ed.2d 725 (1975)(citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972))(internal quotation omitted). Here, on the basis of state law, M.R. had a legitimate claim of entitlement to a public education. *See* Wis. Const. Art. 10 § 3 ("The legislature shall provide by law for the establishment of district schools, which shall be ... free and without charge for tuition to all children between the ages of 4 and 20 years.") Having chosen to extend the right to an education to people of M.R.'s class generally, Wisconsin "may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Goss*, 419 U.S. at 574, 95 S.Ct. 729 (citing *Arnett v. Kennedy*, 416 U.S. 134, 164, 94 S.Ct. 1633, 40 L.Ed.2d 15 (Powell, J., concurring)(1974)). Additionally, requirements of substantive due process (as opposed to procedural due process) require that the student's right to an education not be withdrawn arbitrarily. *Id. See also Dunn v. Fairfield Community High School District No. 225*, 158 F.3d 962, 966 (7th Cir.1998).

■ The first task faced by the court is to determine whether the expulsion procedures employed by the Burlington Area School District were "fundamentally fair." To be fair, an expulsion procedure must offer a student an opportunity to be heard in a "meaningful manner." *Linwood v. Bd. of Educ. of City of Peoria, School Dist. No. 150*, 463 F.2d 763, 770 (7th Cir.1972). The Seventh Circuit Court of Appeals has determined that an opportunity to be heard is meaningful if the student is informed of the charges against him, is given notice of the expulsion hearing, and is given a full opportunity to explain his position in an evidentiary hearing. *See Betts v. Bd. of Educ. of City of Chicago*, 466 F.2d 629, 633 (7th Cir.1972). There is no requirement that the expulsion hearing "take the form of a judicial or quasi-judicial trial." *Linwood*, 463 F.2d at 770.

Here, M.R. and his mother were informed of the charges against him, were given notice of the expulsion hearing, and were given an opportunity to present exculpatory or mitigating evidence. Thus, the defendants satisfied the *Betts* requirements for procedural due process. *See* 466 F.2d at 633. *See also Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, 826 F.2d 526, 529 (7th Cir.1987). Ms. Remer nonetheless contends that the procedure used was not "fundamentally fair" because M.R. did not attend to defend himself, Principal Martinez may have presented a biased case against M.R., and the expulsion hearing was an alleged "sham."

As the Seventh Circuit Court of Appeals has explained, due process does not require that a student actually be present during a school board's expulsion deliberations. *See Lamb*, 826 F.2d at 529. "All that is required is that the student have an opportunity to present his or her case to the board." *Id.* If the student chooses not to present his case to the board when given the opportunity, he waives the right to do so. *Cf. Cliff v. Bd. of Sch. Commissioners of the City of Indianapolis, Indiana*, 42 F.3d 403, 413–14 (7th Cir.1994)(finding that employee waived right to a pre-termination hearing by failing to accept an earlier offer for such a hearing). Simply put, one "cannot sue in federal court to secure a right which he declined when it was voluntarily offered to him." *Suckle v. Madison General Hosp.*, 499 F.2d 1364, 1367 (7th Cir.1974). *See also Fuller v. Decatur Public Sch. Bd. of Ed. Sch. Dist. 61*, 78 F.Supp.2d 812, 822–23 (C.D.Ill.2000)(finding that school board satisfied due process by offering expelled students opportunity to defend themselves

at an evidentiary hearing, which they declined).

Ms. Remer contends that M.R.'s situation is different from those in the cases above, where the plaintiffs simply chose not to attend their evidentiary hearings. She claims that since M.R. was the subject of a preliminary injunction barring him from visiting school district property during his suspension, the school district violated his due process rights by holding the expulsion hearing at a district-owned middle school. In her responses to the Defendants' Proposed Findings of Fact ["DPFOF"], however, she admits that "nothing prevented M.R. or his parents or counsel from attending" the expulsion hearing. *See* DPFOF 21 (admitted). Indeed, the school board's counsel, Mitchell Moser, specifically wrote Ms. Remer's attorney to assure the Remers that M.R.'s participation in the expulsion hearing would not violate the terms of the extended preliminary injunction. In light of Ms. Remer's candid admissions on this point, the mere existence of the potentially troublesome preliminary injunction does not present a triable issue of fact for a jury. Ms. Remer's first attempt to bring her lawsuit out of the mainstream of hearing waiver cases therefore fails.

■ Ms. Remer's second attempt to distinguish her case from the established precedent also fails. She claims that M.R.'s expulsion hearing did not comport with basic due process requirements because the "prosecutor" at the hearing, Principal Martinez, was biased against M.R. (presumably because he was a target of the planned violence) and failed to present evidence that the county district attorney had decided against bringing criminal charges against M.R. While it may be true that

Principal Martinez did not present certain potentially mitigating evidence on behalf of M.R.,[5] he was under no duty to do so. An identical argument was raised—and rejected—in *Fuller v. Decatur Public School Board of Education School District 61, supra.* There, students who chose not to attend their expulsion hearings complained that the school board may not have considered evidence suggesting that the fight in which they were involved was not as violent as alleged and that the students were otherwise good citizens. The court wrote, "[t]he students have provided the court with no case law supporting their argument that the School Board's [failure to consider mitigating evidence] violated their procedural due process rights. As previously noted, the case law is clear that an expulsion hearing is sufficient to meet the procedural due process requirements of the law if the plaintiff knew the charges against him, received notice of the hearing, and was given a full opportunity to explain his position in an evidentiary hearing." 78 F.Supp.2d at 823.

The court agrees with its sister court in Illinois that there is no due process requirement that a school official acting as a prosecutor change his hat and also act as a defense advocate if the student himself chooses not to attend his expulsion hearing. *Cf. Lamb*, 826 F.2d at 529 (school principal may act as prosecutor in expulsion hearing). M.R. had an opportunity to present all the mitigating evidence he desired, but chose not to do so. He cannot now complain that certain evidence may not have been presented.

■ The court is also unconcerned that the individual presenting evidence of M.R.'s alleged wrongdoing was a target of

---

5. It should be noted that Principal Martinez *did* present the board with the strongest piece of mitigating evidence M.R. himself might have presented—that M.R. had backed out of the plan to shoot students and staff before anyone was actually injured.

the planned violence. Ms. Remer has cited absolutely no case law establishing who may, or may not, be a prosecutor at an expulsion hearing. Nonetheless, the Seventh Circuit Court of Appeals has noted that "an occasional case" may demonstrate that a school official's involvement in an incident creates a bias such as to preclude that official's participation in an expulsion procedure consonant with due process. *Lamb, supra,* 826 F.2d at 529 (citing *Brewer v. Austin Indep. Sch. Dist.,* 779 F.2d 260, 264 (1985)). In such a case, however, the plaintiff must come forward with actual evidence of bias.[6] *See id.* Here, Ms. Remer asks the court to presume bias from the fact Principal Martinez was a potential target of the aborted attack M.R. helped plan. The court is unwilling to indulge in such an inference as there has been no suggestion (by the plaintiff or in the record) that Principal Martinez carried out his evidence presentation duties in other than a thoughtful and professional manner.[7] Furthermore, as discussed more fully below, any personal animus Principal

Martinez may have felt toward M.R. is rendered procedurally irrelevant by the fact he was not the final decisionmaker in the expulsion process employed by the Burlington School District—the school board was. As the decision to expel M.R. was made by an impartial school board after intelligent debate touching on, among other things, whether M.R.'s return to the classroom would present a danger to the health or safety of students and staff at the school, including himself, the court finds as a matter of law that the involvement of Principal Martinez in the presentation of evidence against M.R. did not violate his procedural due process rights.

 Ms. Remer's final attempt to differentiate the procedural due process claims in her case from those in prior cases also fails. While she asserts that M.R.'s expulsion hearing was a sham, the only evidence she musters in favor of this position is the fact Principal Martinez was prepared to recommend that M.R. be expelled "[w]hether M.R. attended the hearing or not[.]"[8] Pl's. Response Br. at 9.

---

6. It is unclear what level of evidence would satisfy this standard as the parties have failed to cite, and the court has not discovered independently, any cases where a court has actually found sufficient evidence of administrator bias to bring to a jury.

7. The plaintiff does complain that Principal Martinez did not present evidence that the district attorney would not be pursuing criminal charges against M.R. but, as discussed above, this omission did not violate M.R.'s rights. Furthermore, as the standards for criminal prosecution and expulsion are very different, the court is doubtful that evidence of the district attorney's decision not to prosecute would even have been relevant to the decision the school board was required to make. The court is unwilling to draw an inference of bias from this omission alone. *See Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) (court "not required to draw every conceivable inference from the record—only those inferences that are reasonable") (citations omitted).

8. In an odd sentence in the plaintiff's response brief, she also suggests that the hearing was a sham because it was held despite the "fact" M.R. was ill. *See* Pl.'s response brief at 13. There has been no proposed finding of fact that M.R. was ill on December 1, 1998, however, and the court can find no evidence in the record that M.R. was ill or that his illness was his reason for not attending the expulsion hearing. (In fact, the evidence suggests otherwise.) Further, the defendants strenuously deny that M.R. was ill or that illness played any role in his decision not to attend the expulsion hearing. *See* Def's. Reply Br. at 4, n. 2. As the plaintiff has not complied with Civil L.R. 56.2(b), requiring all relevant factual propositions to be set out in proposed findings of fact with specific citations to evidentiary materials in the record that support those propositions, the court will not consider Mr. Remer's allegation in conjunction with this motion for summary judgment.

That the official in charge of presenting evidence of alleged student wrongdoing would be prepared to recommend expulsion is not in the least bit surprising—nor indicative of a due process violation. While "[d]ue process requires that a hearing 'must be a real one, not a sham or a pretense,'" *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir.1982)(quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 164, 71 S.Ct. 624, 95 L.Ed. 817 (Frankfurter, J., concurring)(1937)), this simply means that the *decisionmakers* in an administrative hearing must be unbiased—not that the advocates for one position or another must be free of set opinions. *See Ryan v. Illinois Dept. of Children and Family Services*, 185 F.3d 751, 762 (7th Cir.1999)("That at the start of the hearing the ... decisionmakers tentatively believe the [plaintiff] should be removed does not raise a constitutional problem ... as long as the *decisionmakers* are open to other views")(emphasis added).

There is a "strong presumption" that administrative decisionmakers are impartial. *Greer v. Amesqua*, 212 F.3d 358, 368 (7th Cir.2000). Ms. Remer has not overcome this presumption. In fact, she has presented no evidence at all that the school board members who voted to expel her son were biased against M.R. in any way. Absent such evidence, Ms. Remer may not proceed to trial on this point.

As it is undisputed that the district informed M.R. of the charges against him, informed him of the date and time of his expulsion hearing, and granted him an opportunity to present exonerating or mitigating evidence, no rational juror could find that the defendants violated M.R.'s procedural due process rights. Accordingly, the court must grant the defendants summary judgment as to Ms. Remer's procedural due process claim.

Ms. Remer's next argument is that the defendants violated M.R.'s substantive due process rights. She alleges that the school board's action suspending M.R. until the year 2003 simply for failing to be a "snitch" was irrational and merely punitive.[9] She supports her argument by noting that no other student had previously been suspended from Burlington High School for multiple years.

What has come to be known as "substantive due process" is the idea that governmental deprivations of life, liberty or property are subject to certain fundamental limitations—regardless of the adequacy of the procedures employed. *See* Comment, *Developments in the Law: The Constitution and the Family*, 93 Harv. L.Rev. 1156, 1166 (1980). As the Constitution itself says nothing about the limitations that might exist in this realm, however, courts have restrained themselves to the most "narrow avenue for judicial review" in substantive due process cases. *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 227, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). The one solid touchstone of substantive due process analysis is that governmental bodies may not act arbitrarily—that is, they must have some "rea-

9. Ms. Remer also states, curiously, that the school board's action was irrational because there was "no evidence in this record that the Plaintiff was involved in the plot to kill students, teachers and staff." Pl's. Response Br. at 17. This assertion, of course, contradicts all the other evidence the parties have presented that M.R. helped plan such a siege, but then backed out of the plan. Further, the defendants have presented uncontradicted evidence that Principal Martinez furnished the school board with evidence of M.R.'s involvement, including police reports and a delinquency petition. *See* DPFOF 20 (admitted). The obviously erroneous assertion that the school board had no evidence of M.R.'s allged wrongdoing does not create an issue of fact for trial.

sonable justification" for their actions. *Dunn, supra,* 158 F.3d at 965. Only the most "egregious" official conduct is arbitrary in the constitutional sense, though. *See id.* Therefore, the court may only find a constitutional violation when faced with "an abuse of power that 'shocks the conscience.'" *Id.* (quoting *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

▮ Under substantive due process analysis, it becomes the court's duty to determine if the school board's decision was supported by *any* reasonable basis. *See Dunn,* 158 F.3d at 965 (only the exercise of governmental power "without any reasonable justification" violates conceptions of substantive due process). *See also, Brewer v. Austin Indep. Sch. Dist.,* 779 F.2d 260, 264 (5th Cir.1985)(review of a school disciplinary action on substantive due process grounds is only available in the "rare case" where there is "no rational relationship between the punishment and the offense"). Here, the facts show that Principal Martinez presented the school board with evidence of M.R.'s participation in the planning of the thwarted siege. This evidence took the form of police reports, a delinquency petition, an oral description of his meetings with the police, and an oral discussion of his review of a taped police statement in which one of M.R.'s co-conspirators indicated that M.R. was involved in the formulation of the plan. Such evidence of M.R.'s participation in the formulation of a plan to shoot and injure students and school employees clearly satisfies the statutory requirements for expulsion in Wisconsin. *See* Wis. Stat. § 120.13(1)(c)(1) (students may be expelled for conduct while away from school that endangers the health or safety of persons at school or endangers the health or safety of any school employee). Furthermore, the court cannot say that expelling a stu-

dent for developing a plan to shoot and injure people on school property and not taking any action to warn anyone or otherwise thwart the planned violence is not rationally related to the valid governmental interest in providing a safe environment conducive to learning, protecting students and staff, and maintaining discipline. *See Trujillo v. Taos Municipal Schools,* 1995 WL 868603 at *10 (D.N.M.1995)(permanent expulsion of honors student for bringing unloaded gun to school rationally related to school's interests in safety and discipline). That no Burlington High School student had ever previously been suspended for multiple years does not change the court's analysis. The school simply had never been faced with a wide-ranging murder plot before. *Cf. Petrey v. Flaugher,* 505 F.Supp. 1087, 1092 (E.D.Ky. 1981)("Far from being a trivial matter, as contended by the plaintiff, his offense was of sufficient gravity to justify expulsion .... This has been expressly declared by statute").

While depriving a student of a public education is undoubtedly a harsh sanction, *see Tate v. Racine Unified Sch. Dist.,* No. 96–C–524, slip. op. at 14 (E.D.Wis. Aug. 15, 1996) ("permanent expulsion is a draconian penalty"), it "is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion," *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). All the court may do is determine whether a school district taking such a step comported with the requirements of the Constitution. *See Wood,* 420 U.S. at 326, 95 S.Ct. 992 ("The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion

which do not rise to the level of violations of specific constitutional guarantees"). As the plaintiff has cited no cases suggesting that a multiple year suspension for planning school violence is an "extraordinary departure from established norms," *Dunn v. Fairfield Comm. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir.1998), and the undisputed facts show that a rational relationship existed between the board's action and its legitimate goals of preserving security and discipline in the school, the court must concur with the defendants that the expulsion, however long, did not violate M.R.'s substantive due process rights. Thus, summary judgment is appropriate on this claim, as well.

Next, the court must address, briefly, Ms. Remer's conspiracy claim against Principal Martinez and Superintendent Jandura. Unfortunately, neither party addressed this issue in their respective briefs. This does not mean that the court is powerless to grant defendants Martinez and Jandura summary judgment, however. As the court already has determined that M.R. was not deprived property or liberty interests without due process of law, Ms. Remer's claim that Principal Martinez and Superintendent Jandura conspired to do so is inoperable. *See Ulichny v. Merton Cmty. Sch. Dist.*, 93 F.Supp.2d 1011, 1042 (E.D.Wis.2000). Accordingly, summary judgment also will be entered for the defendants on this claim.

■ Finally, the court must address the individual defendants' claims of qualified immunity. Even if a higher court should determine that due process requires that the presenter of evidence of a student's alleged wrongdoing not be a target of that student's alleged wrongdoing—or that M.R.'s due process rights were violated in some other way—it is this court's finding that the individual defendants are nonetheless entitled to personal immunity from

judgment. This is because government officials (such as the individual defendants here) performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Importantly, it is the plaintiff "who bears the burden of establishing the existence of the allegedly clearly established constitutional right." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.1988).

Here, Ms. Remer claims that she has satisfied her burden of showing the violation of a clearly established constitutional right by citing cases holding that a school board member's expulsion decision may not be arbitrary or capricious. *See, e.g., Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979). While this general statement is undoubtedly true, it does not in any way suggest that the actions of the individual defendants *were* unconstitutionally arbitrary or capricious. As the test for immunity is "whether the law was clear in relation to the specific facts confronting the public official[s]" when they acted, *Rakovich*, 850 F.2d at 1209, by failing to cite cases showing that a potential victim of student violence may not present evidence of that planned violence (or that the defendants otherwise acted unconstitutionally), Ms. Remer has failed to establish that the individual defendants are not entitled to qualified immunity, *see Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir. 1987)("While cases involving the exact fact pattern at bar are unnecessary, case law in a closely analogous area is crucial to permit [the court] to conclude that reasonably diligent government officials would have known of the case law, related it to the

situation at hand, and molded their conduct accordingly")(citing *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir.1985)).

For the foregoing reasons,

**IT IS ORDERED** that the defendants' motion for summary judgment be and the same is hereby **GRANTED** and this action be and the same is **DISMISSED** on its merits together with costs as taxed by the clerk of the court.

The clerk of court is directed to enter judgment accordingly.